Argued and submitted May 6, the decision of Court of Appeals reversed;
judgment of circuit court affirmed December 15, 2005

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## CONRAD BRISCOE MUNRO,
*Respondent on Review.*

(CC 02-0243; CA A120381; SC S51937)

124 P3d 1221

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Andy Simrin, Salem, argued the cause and filed the briefs for respondent.

DE MUNIZ, J.

## DE MUNIZ, J.

In accordance with a lawful warrant authorizing the search for and seizure of drug-related evidence, the police seized a Beta videotape from defendant's apartment. When the police initially played the videotape, it appeared to be blank. A year later, the police received information that the videotape contained evidence of child pornography. The police examined the tape again, this time looking for images of children engaged in unlawful sexual activity. Again the tape appeared to be blank. Eventually, using a different tape player, the police were able to view pornographic images of children on the videotape and charged defendant with encouraging child sexual abuse in the second degree.[1] Before trial, defendant moved to suppress the videotape and its contents. The trial court denied defendant's motion, and a jury found defendant guilty of encouraging child sexual abuse in the second degree.

Defendant appealed to the Court of Appeals, arguing that the trial court erred in failing to suppress the contents of the videotape.[2] The Court of Appeals agreed with defendant, holding that the warrant did not authorize the state's subsequent examination of the videotape. *State v. Munro*, 194 Or App 538, 96 P3d 348 (2004). We allowed the state's petition for review and now reverse the decision of the Court of Appeals.

The facts are undisputed. In June 2000, the unit supervisor for the Clackamas County Sheriff's Child Abuse Team prepared an affidavit for a search warrant.[3] Based on

---

[1] ORS 163.686 provides, in part:

"(1) A person commits the crime of encouraging child sexual abuse in the second degree if the person:

"(a)(A)(i) Knowingly possesses or controls any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child for the purpose of arousing or satisfying the sexual desires of the person or another person; * * *

"* * * * *

"(2) Encouraging child sexual abuse in the second degree is a Class C felony."

[2] In the Court of Appeals, defendant raised other challenges to his conviction. The Court of Appeals rejected those challenges, and we do not address them here.

[3] The affidavit described videotapes related to drug possession and sales in two places:

the affidavit, a judge issued a search warrant authorizing a search of defendant's home for drug-related evidence, including marijuana, drug paraphernalia, business records and various media including photographs and videotapes, and proceeds from drug trafficking.[4] In the search of defendant's

"D) Persons who possess and distribute marijuana and other controlled substances often keep records pertaining to their illegal narcotic activities. These include records of marijuana values they have packaged and sold, lists of customers and associates, and records of drug payments and debts. Such records are commonly kept at the premises where the controlled substances are processed and sold, are secured in safes, lockboxes, computers, or other secure or concealed locations secreted at the location. This facilitates easy access by the seller while affording protection from unwanted discovery.

"These records include written and electronically stored business documents, ledgers, address books, computer files and software, telephone toll records, notes, messages, *photographs and video films,* and encrypted memoranda indicating drug debts/sales.

"* * * * *

"Based on the above information, I have probable cause to believe that located on or in the premises, property, buildings, and curtlage located at #2 Jefferson Parkway Apartment H6, Lake Oswego, Clackamas County, Oregon and in a black 1999 Ford Mustang Coup, Oregon License JEFRSN is evidence of the crimes of Possession of a Schedule 1 Controlled Substance and Delivery of a Schedule 1 Controlled Substance to wit: marijuana, including but not limited to other controlled substances; drug paraphernalia including a custom marijuana smoking pipe about 7 inches long with the date and signature of the artist on the mouthpiece; items of identification such as utility bills, mail addressed to the occupants, rent receipts and property ownership papers, financial and personal paper, business records such as ledgers, address books, bank records, travel records, computers and their files and related software, telephone toll records; phone recorders, cellular telephones, electronic pagers, caller identification devices, notes, messages, encrypted memoranda, records of drug sales and debts, photographs and *videotapes*; business equipment such as weigh scales, packaging materials, any equipment, supplies and instructions guides used to traffic marijuana and any other controlled substances; cash and other negotiable securities and commodities including checks, money orders precious metals and any other proceeds from the trafficking of controlled substances; and weapons."

(Emphasis added.)

[4] The warrant provided, in pertinent part:

"You are hereby commanded to search:

"* * * * *

"For the following described property:

"[M]arijuana, including but not limited to other controlled substances; drug paraphernalia including a custom marijuana smoking pipe about 7 inches long with the date and signature of the artist on the mouthpiece; items of identification such as utility bills, mail addressed to the occupants, rent receipts and property ownership papers, financial and personal paper; business records such as ledgers, address books, bank records, travel records, computers and their files and related software, telephone toll records; *phone recorders,*

home that followed, police officers seized various VHS video-tapes and one Beta videotape along with marijuana and drug-related items. When the officers initially viewed the Beta videotape, it appeared to be blank. Nevertheless, the officers retained the tape. In May 2001, the state charged defendant with possession of a controlled substance.[5]

In June 2001, while defendant's trial on the drug charges was pending, police officers received information indicating that the Beta videotape contained images of child pornography that was not readily viewable on every Beta player. Police officers again attempted to view the tape on their own Beta player and then at the facilities of a Portland television station. When both of those attempts proved unsuccessful, the officers contacted a video service company. That video company was successful in accessing the porno-graphic contents of the videotape.[6] Thereafter, the state charged defendant with encouraging child sexual abuse. Sub-sequently, a jury found defendant guilty of encouraging child sexual abuse in the second degree. Defendant appealed that conviction to the Court of Appeals.

The Court of Appeals reversed defendant's convic-tion and remanded the case for a new trial. The Court of Appeals held that the trial court should have suppressed the contents of the videotape because the police officers' subse-quent viewing of the videotape constituted a separate, war-rantless search that violated Article I, section 9, of the

*cellular telephones, electronic pagers, caller identification devices, notes, mes-sages, encrypted memoranda, records of drug sales and debts, photographs and videotapes*; business equipment such as weigh scales, packaging materials, any equipment, supplies and instructions guides used to traffic marijuana and any other controlled substances; cash and other negotiable securities and com-modities including checks, money orders, precious metals and any other pro-ceeds from the trafficking of controlled substances; and weapons."

(Emphasis added.)

[5] In August 2001, a jury convicted defendant of possession of a controlled substance.

[6] In its opinion below, the Court of Appeals wrote that the video service com-pany had "succeeded in copying the content of the Beta videotape into VHS format. [The police officer] then viewed the videotape and saw 'what appeared to be young boys involved in sexual activity.'" *State v. Munro*, 194 Or App 538, 541, 96 P3d 348 (2004). The state contends, and the evidence appears to establish, that a police offi-cer was able to view the contents of the videotape prior to those contents being transferred onto a VHS videotape.

Oregon Constitution. *Munro*, 194 Or App 538. As noted, we allowed the state's petition for review.

■     On review, the state concedes that the "videotape did not announce its contents" and that the second examination of the videotape was a "search." We accept the state's concessions. Nevertheless, the state argues that the search of the videotape was reasonable under Article I, section 9, of the Oregon Constitution "[b]ecause the police continued to act pursuant to the warrant's authority and did not exceed its scope when they looked only in a place identified by the warrant." In other words, the state does not seek to justify the second examination of the videotape on any basis independent of the authority of the warrant.

In response to the state's argument, defendant contends that the subsequent examination of the videotape for evidence of child pornography was not authorized under the drug-related-evidence scope of the warrant and, therefore, amounted to a separate warrantless search that violated his privacy rights under various statutory provisions, Article I, section 9, of the Oregon Constitution,[7] and the Fourth Amendment to the United States Constitution.[8] In our view, the question before this court is whether defendant retained a privacy interest in the contents of the videotape after its seizure and initial examination that lawfully could not be invaded under the authority of the warrant.

Ordinarily, this court analyzes statutory issues applicable to a case before reaching constitutional ones. *State v. Davis*, 295 Or 227, 240, 666 P2d 802 (1983). However, in

---

[7] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[8] The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

this case, defendant's various statutory arguments center on the warrant requirements set out in ORS 133.565(2).[9] In *State v. Ingram*, 313 Or 139, 143, 831 P2d 674 (1992), this court observed that the ORS 133.565(2) requirements are intended to address the extent of discretion that the face of a warrant permits an executing officer to exercise and to implement the constitutional prohibition against general warrants, and are as restrictive as the constitutional prohibitions against general warrants. Given those observations regarding the statutory requirements and the legislature's subsequent enactment of ORS 136.432,[10] we necessarily analyze defendant's arguments under Article I, section 9.

■■    Article I, section 9, protects both possessory and privacy interests in effects. *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986). In *State v. Campbell*, 306 Or 157, 170, 759 P2d 1040 (1988), this court stated that "[a] privacy interest * * * is an interest in freedom from particular forms of scrutiny." Privacy interests that are protected by Article I, section 9, commonly are circumscribed by the space in which they exist and, more particularly, by the barriers to public entry (physical and sensory) that define that private space. *State v. Smith*, 327 Or 366, 373, 963 P2d 642 (1998). We agree with

---

[9] ORS 133.565(2) provides:

"The warrant shall state, or describe with particularity:

"(a)  The identity of the judge issuing the warrant and the date the warrant was issued;

"(b)  The name of the person to be searched, or the location and designation of the premises or places to be searched;

"(c)  The things constituting the object of the search and authorized to be seized; and

"(d)  The period of time, not to exceed five days, after execution of the warrant except as provided in subsection (3) of this section, within which the warrant is to be returned to the issuing authority."

[10] ORS 136.432 provides:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1)  The United States Constitution or the Oregon Constitution;

"(2)  The rules of evidence governing privileges and the admission of hearsay; or

"(3)  The rights of the press."

defendant that an unlabeled videotape is not a transparent container that announces its contents to anyone looking at the container. As the owner of the videotape, defendant had a possessory and a privacy interest in the contents of the videotape protected by Article I, section 9.

The warrant, however, authorized the seizure of the videotape, thereby lawfully depriving defendant of his possessory interest in the videotape. Similarly, the warrant authorized the police to invade the privacy of the videotape by examining and exhibiting its contents.

It is true that, in this case, the police initially did not see anything on the videotape when they examined it. Defendant argues from that fact that, because nothing had been revealed by that initial examination, defendant's privacy interest in the contents of the videotape was never destroyed. That is, as we understand defendant's argument, so long as there remained the possibility that defendant could reclaim the videotape, defendant's privacy interest in the contents of the videotape remained until that privacy interest was lawfully invaded under the authority of a warrant. According to defendant, because the warrant authorized the seizure and search of the videotape only for evidence of illegal drug activity, the subsequent examination for evidence of child pornography was not within the authority of the warrant and therefore amounted to an unwarranted and unreasonable search in violation of Article I, section 9. As we explain below, we disagree with defendant's premise that defendant retained any privacy interest in the contents of the videotape that was not destroyed by its warranted seizure and initial examination.

Here, the warrant lawfully authorized the seizure of the videotape and the invasion of defendant's privacy interest in its contents. Once the police seized the videotape under the authority of the warrant, any privacy interest that defendant had in the contents of the videotape was destroyed by the authority of the warrant permitting the examination and exhibition of the contents of the videotape. Until such time as defendant regained lawful possession of the videotape, he had no remaining privacy interest in its contents that he could assert.

The fact that the police did not initially observe any images on the videotape when they initially examined it is of no legal significance. Once they lawfully had seized the videotape, nothing prevented the police from examining the contents of the videotape as often as they deemed necessary. Furthermore, once the videotape was lawfully seized under the authority of the warrant, any images stored on the videotape, no matter how hidden, private, or secret, were no longer protected by Article I, section 9. *See Campbell*, 306 Or at 166 ("The constitutional provisions against unreasonable searches and seizures do not protect a right to keep any information, no matter how hidden or 'private,' secret from the government.").

When the police subsequently accessed the pornographic images stored on the videotape, they were searching in a location authorized by the warrant. As long as the police were searching in a location authorized by the warrant—a location in which defendant had no remaining privacy interest—their subjective intent or their purpose for the search is of no constitutional significance.

We hold that, in this case, the subsequent examination of the videotape for evidence of child pornography was reasonable under Article I, section 9, because the police were lawfully in possession of the videotape under the authority of the warrant, they searched in a location authorized by the warrant, and defendant had no remaining privacy interest in the videotape's contents at the time of the search.[11]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

[11] Defendant's similarly phrased arguments under the Fourth Amendment are rejected for the same reasons expressed in our analysis under Article I, section 9, of the Oregon Constitution.