Submitted March 5, 2018; in Case No. 13FE1069, conviction on Count 2 reversed and remanded, remanded for resentencing, otherwise affirmed; in Case No. 14FE0086, affirmed August 19; petition for review denied December 10, 2020 (367 Or 291)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TROY ANTHONY MONGER,
*Defendant-Appellant.*

Deschutes County Circuit Court
14FE0086, 13FE1069;
A160640 (Control), A160641, A160069

472 P3d 270

Defendant challenges his convictions for three counts of encouraging child sexual abuse in the first degree, ORS 163.684, one count of sexual abuse in the first degree, ORS 163.427, and one count of online sexual corruption of a child in the second degree, ORS 163.432, and argues that the trial court erred in denying his motion to suppress and in accepting a nonunanimous jury verdict for second-degree online sexual corruption of a child. Defendant argues that the search warrant that authorized a search of his computer and cell phone was not "executed" for purposes of the statutorily required timeframe in ORS 133.565. The state concedes that the trial court erred in accepting the nonunanimous jury verdict, but argues that the trial court did not err in denying the motion to suppress because the warrant was executed within the statutorily required timeframe. *Held*: The Court of Appeals accepted the state's concession and exercised its discretion to correct the error on the trial court's acceptance of the nonunanimous jury verdict. The court also held that the trial court did not err in denying defendant's motion to suppress because the term "executed" for purposes of ORS 133.565(3) does not require completion of every action authorized by a search warrant. The warrant was being executed when it was sent to the forensic evidence officer to authorize the search of defendant's computer and cell phone.

In Case No. 13FE1069, conviction on Count 2 reversed and remanded; remanded for resentencing; otherwise affirmed. In Case No. 14FE0086, affirmed.

Beth M. Bagley, Judge.

Stephen P. Forte, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Mary M. Reese, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant. Troy A. Monger filed the supplemental brief *pro se.*

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jennifer S. Lloyd, Assistant Attorney General, filed the briefs for respondent.

Before Ortega, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.

POWERS, J.

In Case No. 13FE1069, conviction on Count 2 reversed and remanded; remanded for resentencing; otherwise affirmed. In Case No. 14FE0086, affirmed.

**POWERS, J.**

In this consolidated criminal appeal, defendant challenges his convictions for three counts of encouraging child sexual abuse in the first degree, ORS 163.684, one count of sexual abuse in the first degree, ORS 163.427, and one count of online sexual corruption of a child in the second degree, ORS 163.432. We write to address whether the trial court erred in denying defendant's motion to suppress and whether the trial court erred in accepting a nonunanimous jury verdict. We reject the remaining assignments of error without discussion.[1] With respect to the former issue, we reject defendant's argument that the search warrant that authorized a search of his computer and cell phone was not "executed" for purposes of the statutorily required timeframe in ORS 133.565, and, therefore, the trial court did not err in denying his motion to suppress. On the latter issue, the state concedes error with respect to the nonunanimous jury verdict, and we accept that concession. Accordingly, because we accept the state's concession regarding the nonunanimous jury verdict for second-degree online sexual corruption of a child, we reverse and remand that conviction and otherwise affirm the remaining convictions that were the result of a trial to the court.

We review a trial court's denial of a motion to suppress for errors of law, and we are bound by the trial court's findings of fact if they are supported by the record. *State v. Baker*, 350 Or 641, 650, 260 P3d 476 (2011).

The facts are undisputed. Bend Police Officer Michaud went to question defendant at his home to investigate Facebook messages between defendant and a minor, S, as part of a sex abuse investigation. Defendant showed Michaud his desktop computer and the incriminating messages on his Facebook account. During the interaction, defendant consented to the search and seizure of his computer and cell phone, provided the passwords to his computer, Facebook account, and phone, and subsequently he was arrested.

---

[1] In total, defendant raises three assignments of error in his opening brief, two supplemental assignments of error in a corrected supplemental opening brief, and two assignments of error in a *pro se* supplemental opening brief.

On August 22, two days after defendant was arrested, Michaud applied for a warrant to search defendant's computer and cell phone that were in police custody, and the warrant was issued that same day. The warrant authorized officers to "search and/or seize and/or analyze and/or photograph and/or digitally replicate" defendant's electronic devices and required the return of the warrant within 30 days of its execution.[2] The next day, August 23, Michaud sent a copy of the warrant to Detective Hubbard, a forensic evidence officer, and requested that Hubbard search the electronic devices pursuant to the warrant. Also on that day, Michaud filed a copy of the warrant in his case file, which was formally entered by the Bend Police records department into the Bend Police internal system on August 26. On September 24, Hubbard made a digital copy of defendant's electronic devices; he did not interact with those devices in any capacity before that date. A search of those digital copies revealed images of nude minor girls. Defendant was eventually indicted for various sex offenses and moved to suppress evidence that was gathered from the search of his computer and cell phone.

At the suppression hearing, defendant contended, among other arguments, that the officers failed to "execute" the search warrant within five days of its issuance as required by ORS 133.565(3).[3] ORS 133.565(3), which has not been amended since it was first enacted in 1973, provides, in part:

"the search warrant shall be executed between the hours of 7 a.m. and 10 p.m. and within five days from the date

---

[2] The parties do not suggest any material significance to the warrant specifically authorizing officers to "analyze and/or photograph, and/or digitally replicate" defendant's electronic devices. Thus, although we refer to those authorizations throughout this opinion, they appear to be merely different types of "searches" authorized by the warrant. *See State v. Mansor*, 363 Or 185, 199-200, 421 P3d 323 (2018) (describing the two-step approach to criminal investigations involving electronic devices such as computers: the data acquisition phase and the data reduction phase, and referring to the data-reduction phase, where there is a forensic examination of the data, as a "search").

[3] At the suppression hearing, defendant also raised an issue with respect to ORS 133.565(2)(d), which requires a warrant return to occur within five days of the warrant's execution. The issuing magistrate made an interlineation on the warrant, allowing for a return in 30 days of the warrant's execution. Although the propriety of that interlineation was challenged before the trial court, it is not raised on appeal and thus we do not address it.

of issuance. The judge issuing the warrant may, however, by indorsement upon the face of the warrant, authorize its execution at any time of the day or night and may further authorize its execution after five days, but not more than 10 days from the date of issuance."

Specifically, defendant argued that the search warrant was "executed" on September 24, when the forensic evidence officer made a digital copy of the devices. Because September 24 is beyond five (or even 10) days from the issuance of the warrant, defendant asserted that the warrant had expired and, therefore, under our decision in *State v. Daw*, 94 Or App 370, 765 P2d 241 (1988), all evidence gathered from the search should have been suppressed. We held in *Daw* that a search warrant executed beyond the temporal statutory requirements is a warrantless search, necessitating suppression of evidence gathered from that search if there is no applicable exception to the warrant requirement. *Id.* at 372.

The state argued that, under our decision in *State v. Callaghan*, 33 Or App 49, 576 P2d 14, *rev den*, 284 Or 1 (1978), the warrant was executed on August 23, when Michaud sent the warrant to Hubbard, the forensic evidence officer in possession of the devices. In the state's view, *Callaghan* observed that the legislature did not intend the execution requirement in ORS 133.565(3) to mean a fully completed search and that the term "executed" is synonymous with "served." Because Michaud sent the warrant to Hubbard on August 23, the state urged the trial court to conclude that the warrant was served as of that date and therefore deny the motion to suppress because there was no violation of ORS 133.565(3).

The trial court denied defendant's suppression motion, concluding that *Callaghan* controlled and that the warrant was executed on August 23. Because August 23 was within the five-day execution requirement under ORS 133.565(3), there was no need to suppress the incriminating evidence found on defendant's devices. Ultimately, a nonunanimous jury convicted defendant of one count of online sexual corruption of a child in the second degree in case number 13FE1069 (Count 2), and the court found him

guilty of three counts of first-degree encouraging child sexual abuse and one count of first-degree sexual abuse in case numbers 13FE1069 and 14FE0086.[4]

On appeal, the parties renew their arguments about the interpretation of ORS 133.565(3) and its five-day execution requirement.[5] We understand defendant to argue two interrelated points: (1) *Callaghan* is distinguishable from this case and, therefore, is not binding; and (2) this court should conduct a statutory analysis of ORS 133.565(3). In defendant's view, law enforcement officers have "executed" a warrant when they "do those things essential to [the warrant's] purpose. Thus, a police officer executes a warrant when he or she puts the warrant into effect and does those acts [that] the warrant authorizes or requires." Conversely, the state argues that we are bound by the interpretation in *Callaghan*. As explained below, although we agree with defendant's argument that *Callaghan* does not squarely address the outcome of this case, we nevertheless conclude that the warrant was "executed" for purposes of ORS 133.565(3) when Michaud sent a copy of the warrant

_____

[4] The procedural history is a bit more complicated. This appeal arises from two trials stemming from charges made in four indictments. The first trial involved only case number 13FE1069, where defendant was tried to a jury on one count of first-degree sexual abuse and two counts of second-degree online sexual corruption of a child. The jury found defendant guilty by a 11-1 verdict on one count of second-degree online sexual corruption of a child and was unable to reach a verdict for the remaining two counts.

The second trial was a trial to the court and included charges from three other indictments and a retrial of the two charges from the first trial. The court found defendant guilty of first-degree sexual abuse from case number 13FE1069 and the court found defendant guilty of charges from case number 14FE0086: three counts of first-degree encouraging child sex abuse and 10 counts of second-degree encouraging child sex abuse. The court merged the guilty verdicts on the 10 counts of second-degree encouraging child sex abuse convictions into the guilty verdicts on the three counts of first-degree encouraging child sex abuse. The court acquitted defendant of the remaining count from case number 13FE1069, second-degree online sexual corruption of a child. As to the two remaining indictments, case numbers 15FE0427 and 15CR37753, the court acquitted defendant on all charges.

All told, defendant's convictions include a nonunanimous jury conviction for one count of second-degree online sexual corruption of a child and trial court convictions for one count of first-degree sexual abuse and three counts of first-degree encouraging child sexual abuse.

[5] At the suppression hearing, defendant also challenged whether he provided consent to the seizure of his computer and cell phone. He does not, however, renew that argument on appeal, so we do not address that issue.

to Hubbard to begin the process of searching and analyzing defendant's personal electronic devices.

In *Callaghan*, officers notified the defendant that they had a search warrant and simultaneously commenced the search of the defendant's home. 33 Or App at 55. The officers served the defendant with the search warrant and began the search at 8:30 a.m., but the search continued until 12:30 a.m., the next day. *Id.* The defendant moved to suppress all evidence gathered from the search after 10 p.m., citing a violation of ORS 133.565(3). *Id.* We rejected that argument because it "appear[ed] to be grounded in the semantic distinction between being 'served' and being 'executed.'" *Id.* We held that "'[e]xecute,' in this instance then, is synonymous with 'serve,'" because it "is apparent that in the context of [ORS 133.565(3)] the legislature did not intend for 'execute' to mean a fully completed search." *Id.* at 56. We noted that our holding comported with the use of the term "executed" in ORS 133.555(4), which provides: "Until the warrant is executed, the proceedings upon application for a search warrant shall be conducted with secrecy appropriate to the circumstances." *Id.* We therefore concluded that "once the warrant has been given to the person in control of the premises * * *, and the search commenced, there is nothing secret about it, or any need for secrecy with respect to the proceedings." *Id.*

We agree with defendant's argument that *Callaghan* does not squarely address the situation in this case. As an initial matter, the dispute in *Callaghan* focused on whether officers had executed the search warrant of the defendant's house during the hours of 7 a.m. and 10 p.m., which is one part of the time requirements in ORS 133.565(3), when officers started—but did not complete the search—within that time frame. *Id.* at 55-56. Here, however, the issue is whether officers timely executed a search warrant of a computer and cell phone within the statutorily mandated five- or 10-day requirement from the date of the warrant's issuance when no one interacted with defendant's personal devices within that period of time. Although we concluded in *Callaghan* that the legislature did not intend "execute" to mean a "fully completed search," that does not—without more analysis—fully

address the situation in this case where Hubbard did not make a digital copy of defendant's personal devices until well after the timelines described in ORS 133.565(3).

More fundamentally, a search of a home is qualitatively different than a search of a cell phone or computer. As the Supreme Court of the United States recognized,

> "a cell phone search would typically expose to the government far more than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is."

*Riley v. California*, 573 US 373, 396-97, 134 S Ct 2473, 189 L Ed 2d 430 (2014) (emphasis omitted). The Oregon Supreme Court has explained that "a computer or other digital device is a repository with a historically unprecedented capacity to collect and store a diverse and vast array of personal information." *State v. Mansor*, 363 Or 185, 208, 421 P3d 323 (2018). Given the fundamental difference between a warrant authorizing the search of a home and a warrant authorizing the search of personal electronic devices, we conclude that the discussion of the term "executed" in *Callaghan* does not fully control the outcome of this case.

To the extent that the state relies on *State v. Munro*, 339 Or 545, 552, 124 P3d 1221 (2005), to argue that, "once police have lawfully seized evidence pursuant to a warrant that authorizes its search, the owner no longer has any constitutionally protected interest in its contents," we conclude that that argument is foreclosed by *Mansor*. In *Munro*, officers were granted a warrant to seize and search the defendant's videotape for evidence of drug crimes. 339 Or at 548-49. Initially, the videotape appeared to be blank, but officers kept the tape nonetheless. *Id.* at 549. A year later, upon receipt of a tip, and after a more exhaustive search, officers discovered evidence of child pornography on the videotape. *Id*. The defendant moved to suppress that evidence, arguing that it was a warrantless search because the original warrant only authorized a search for evidence of drug crimes. *Id.* at 549-50. The trial court denied the motion, the defendant

was ultimately convicted of a sex crime, and appealed his conviction. *Id.* On appeal, the Supreme Court held that,

> "[o]nce they lawfully had seized the videotape, nothing prevented the police from examining the contents of the videotape as often as they deemed necessary. Furthermore, once the videotape was lawfully seized under the authority of the warrant, any images stored on the videotape, no matter how hidden, private, or secret, were no longer protected by Article I, section 9[, of the Oregon Constitution.]"

*Id.* at 553.

In this case, the state would have us apply that same reasoning to seizure of defendant's personal electronic devices, *viz.*, once defendant's computer and cell phone were lawfully seized, he lost all possessory and privacy interests in them. However, the Supreme Court explicitly rejected that argument in *Mansor*, which was decided after the state submitted its answering brief in this case.

In *Mansor*, the court discussed the holding of *Munro* in the context of personal electronic devices and concluded that it is an erroneous assumption to equate a videotape with a computer or a cell phone. *Mansor*, 363 Or at 209-10. That is because, unlike a videotape, "[t]he data contained on a personal computer is qualitatively and quantitatively different from the sort of information that could be found in other single objects, or even an entire house not containing digital data." *Id.* at 210. The court, therefore, rejected the argument "that a computer is merely a 'thing to be seized' and that, once lawfully seized, the state is free to analyze or examine the computer without limit and to use any information that is found." *Id.* Similarly, the court observed that unlike an analog videotape that contains static information (*i.e.*, that which was recorded), a cell phone continues to create and store data as it is used. *Id.* Thus, although defendant's computer and cell phone were in police custody, we nevertheless follow *Mansor* and reject the state's assertion in this case that defendant lost any constitutionally protected interest in those devices.

That leaves us, then, to apply our familiar statutory interpretive framework to determine what ORS 133.565(3) means when it requires a search warrant to be "executed"

within a specified time period. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (explaining that we examine a statute's text, context, and pertinent legislative history to discern the legislature's intent). If the legislature has not provided a definition of a statutory term, we "ordinarily look to the plain meaning of a statute's text as a key first step in determining what particular terms mean." *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 295, 337 P3d 768 (2014).

Here, because the legislature did not provide a definition of the term "executed," as it is used in ORS 133.565(3), we begin with dictionary definitions of the term. One dictionary defines "executed" as "carried out : carried out legally according to its terms : PERFORMED." *Webster's Third New Int'l Dictionary* 794 (unabridged ed 2002). According to a legal dictionary, the term "executed" is defined to mean "2. That has been done, given, or performed." *Black's Law Dictionary* 689 (10th ed 2014). Thus, the ordinary meaning of the term "executed" contemplates an act being "carried out" or "performed."

We begin by noting that defendant acknowledges that the officers timely executed part of the warrant when an officer filed a copy of the warrant with police records and sent another officer the warrant with a request to perform a forensic analysis.[6] Thus, defendant's argument suggests that the term "executed" requires a completed act—that is, an act that "has been done"—as opposed to an act that is in the process of being carried out or performed. We reject that restrictive understanding of the term given the context of ORS 133.565, the legislative history, and our prior decision in *Callaghan*.

For context, ORS 133.565(2)(b) and (c) require that a warrant describe both the place to be searched and the objects of the search and authorization to be seized. As noted earlier, the warrant in this case authorized officers to search, seize, analyze, photograph, and digitally duplicate

---

[6] Defendant, like the trial court, likened this to "re-seizure" of the electronic devices. Because there is no need for any physical "re-seizure" of items in police custody, we do not use that terminology to avoid confusion. *See State v. Johnson*, 335 Or 511, 516 n 4, 73 P3d 282 (2003) (explaining that there is no "re-seizure" of evidence already in law enforcement custody).

defendant's personal electronic items that were already seized and were sitting in the Bend Police Department's evidence facility. Although it is plausible to interpret "executed" to require completion of each of those authorizations (*i.e.*, to have searched, seized, analyzed, photographed, and digitally duplicated), there does not appear to be anything in the text or context of ORS 133.565(3) that contemplates why that might be the case. Certainly, there are no distinctions among the various authorizations contained in this particular warrant. That is, if we were to accept defendant's argument that "executed" means completion, then it appears to necessarily follow that all of the authorizations under the warrant would have to be completed within the five- or 10-day timeframe. Thus, if officers seized blood from a suspect or evidence containing DNA from a crime scene pursuant to a warrant, would ORS 133.565(3) require the search and analyses of those items to occur within five or 10 days? *Callaghan* provides a plausible answer: no.

As we observed in *Callaghan*, the legislature did not intend for "execute" to mean a fully completed search. Of course, *Callaghan* answered a slightly different question with respect to the 7 a.m. to 10 p.m. window, observing: "It is the initial shock of officers entering one's house late at night that was sought to be avoided." 33 Or App at 56 (emphasis omitted); *see* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report § 135, 75 (Nov 1972).[7] Although that statement was directed at the time-of-day execution requirement in ORS 133.565(3), we see no reason why it does not equally apply to the five- or 10-day requirement as well.

More to the point, the Commentary describes the staleness concerns that the legislature was addressing when it enacted the five- or 10-day execution requirement:

---

[7] Section 135 of the Commentary at 75 provides, in part:

"Where possible, searches should be conducted in daylight hours. The invasion of private premises in the small hours of the night smacks of totalitarian methods and is more likely to create the terror that precipitates gun battles. Obviously[,] there are occasions when it is imperative that the search be conducted at night. Subsection (3) permits such searches if the judge so authorizes service on the face of the warrant in the nighttime hours after 10 p.m."

"It seems desirable to keep the time allowed for execution of search warrants as short as possible. This tends to eliminate problems with respect to staleness of the warrant which often form a fruitful basis for attack on the legality of the warrant."

Commentary § 135 at 75. Here, where the warrant authorized the search, seizure, analysis, and digital duplication of defendant's electronic devices, it would be anomalous to conclude that a seizure of an electronic device within five days was permissible but that the subsequent search or analysis of the same electronic device that had been stored in an evidence room after weeks had elapsed somehow effected staleness concerns. Indeed, as previously noted, defendant acknowledges that the officers timely executed part of the warrant by filing a copy of the warrant with police records and sending Hubbard the warrant with a request to perform a forensic analysis.

In short, we conclude that "executed" for purposes of ORS 133.565(3) does not require completion of every action authorized by a search warrant. Here, because Michaud sent the warrant to Hubbard, the warrant was being "executed" for purposes of the required statutory timeframe and therefore the trial court did not err in denying defendant's motion to suppress.

Finally, as noted earlier, defendant's conviction for second-degree online sexual corruption of a child was the result of a nonunanimous jury verdict. Although defendant did not raise an objection at trial, he now asserts—and the state concedes—that acceptance of the verdict was plain error under the Sixth and Fourteenth Amendments to the United States Constitution. In *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 1397, 206 L Ed 2d 583 (2020), the Court concluded that nonunanimous jury verdicts violated the Sixth Amendment, and that the unanimity requirement found in the Sixth Amendment is "incorporated against the States under the Fourteenth Amendment." In *State v. Ulery*, 366 Or 500, 504, 464 P3d 1123 (2020), the Oregon Supreme Court concluded that a trial court's acceptance of a nonunanimous verdict constituted plain error and exercised its discretion to correct that error in light of the gravity of

the error and because the failure to raise the issue before the trial court did not weigh heavily against correction, as the trial court would not have been able to correct the error under the controlling law at that time. For the reasons articulated in *Ulery*, we exercise our discretion to correct the error.

In Case No. 13FE1069, conviction on Count 2 reversed and remanded; remanded for resentencing; otherwise affirmed. In Case No. 14FE0086, affirmed.