Argued and submitted November 10, 2021; convictions on Counts 5, 7, 10, 11, 12, 14, and 15 reversed and remanded, remanded for resentencing, otherwise affirmed April 20; petition for review denied October 6, 2022 (370 Or 303)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ADAM JOSEPH TARDIE,
*Defendant-Appellant.*

Lane County Circuit Court
17CR15794; A172055

509 P3d 705

Defendant appeals from a judgment of conviction for multiple counts of fourth-degree assault, coercion, and strangulation. On appeal, he raises 12 assignments of error. His first two assignments of error challenge the denials of successive motions to suppress. In his third and fourth assignments of error, he challenges the trial court's denial of two motions for judgment of acquittal. In his fifth and sixth assignments of error, he claims that the trial court erred in instructing the jury on the strangulation charges. And finally, in his seventh through twelfth claims of error, he argues that the trial court erred in instructing the jury that it could reach nonunanimous verdicts and in accepting nonunanimous verdicts. *Held*: First, the Court of Appeals affirmed the trial court's denial of the motions for judgment of acquittal without discussion. Second, the court concluded that the trial court erred in giving an erroneous strangulation jury instruction and that the error was not harmless. Third, the court accepted the state's concession that four of defendant's convictions must be reversed in light of the jury's nonunanimous verdicts. Lastly, the court concluded that the trial court did not err in denying either of defendant's motions to suppress.

Convictions on Counts 5, 7, 10, 11, 12, 14, and 15 reversed and remanded; remanded for resentencing; otherwise affirmed.

Clara L Rigmaiden, Judge.

Sara Werboff, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Mooney, Presiding Judge, and Joyce, Judge, and DeVore, Senior Judge.*

JOYCE, J.

Convictions on Counts 5, 7, 10, 11, 12, 14, and 15 reversed and remanded; remanded for resentencing; otherwise affirmed.

_____
* Joyce, J., *vice* DeHoog, J. pro tempore.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for multiple counts of fourth-degree assault, coercion, and strangulation. On appeal, he raises 12 assignments of error. His first two assignments of error challenge the denials of successive motions to suppress. In his third and fourth assignments of error, he challenges the trial court's denial of two motions for judgment of acquittal. In his fifth and sixth assignments of error, he claims that the trial court erred in instructing the jury on the strangulation charges. And finally, in his seventh through twelfth claims of error, he argues that the trial court erred in instructing the jury that it could reach nonunanimous verdicts and in accepting nonunanimous verdicts.

We affirm the denial of the motions for judgment of acquittal without discussion. From there, we address the remaining claims of error out of order, because our disposition on some affect how we address others. We reverse and remand on defendant's fifth and sixth assignments of error because we conclude that the trial court erroneously instructed the jury and that the error was not harmless. We reverse and remand certain convictions related to the nonunanimous jury instruction and nonunanimous jury verdicts but affirm others. Finally, we affirm on defendant's first and second assignments of error because the trial court correctly denied both motions to suppress.

## BASIC FACTS

We briefly describe the basic facts underlying defendant's convictions and then, as appropriate, further describe facts as relevant to the corresponding claims of error. Defendant and the victim were in an intimate relationship and lived together in defendant's home. Neighbors called police on December 4, 2016, to report a dispute. Police responded and found the victim outside. She had a bloody fat lip as well as bruising and swelling on her face. She told officers that defendant had assaulted her in the home and that she ran away, but defendant followed her and assaulted her again. The victim told police that defendant had surveillance cameras throughout his home. She also reported

another incident that had occurred on December 1, 2016, during which defendant knocked her to the ground and kicked her. Before that assault, defendant unplugged the surveillance camera that would have captured the assault.

Based on the victim's statements and recovered surveillance video footage, the state charged defendant with a number of crimes. A jury convicted him of multiple counts of fourth-degree assault, strangulation, and coercion.

## JURY INSTRUCTION ON STRANGULATION

The state charged defendant with multiple counts of strangulation. In his fifth and sixth assignments of error, defendant asserts that the trial court erred in declining to give his requested jury instruction on strangulation (sixth assignment) and in instructing the jury on those counts (fifth assignment). We review a trial court's jury instructions for legal error. *State v. Harper*, 296 Or App 125, 126, 436 P3d 44 (2019). "A trial court commits reversible error when it incorrectly instructs the jury on a material element of a claim or defense and that instructional error permits the jury to reach a legally erroneous result." *Id.* (internal quotation marks and citations omitted). We conclude that the court erred in failing to give defendant's requested instruction.

ORS 163.187(1) provides that "a person commits the crime of strangulation if the person knowingly impedes the normal breathing or circulation of the blood of another person[.]" ORS 161.085(8) in turn provides that knowingly, "when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists."

Defendant asked that the court instruct the jury that "knowingly" means that "the person acts with an awareness that his or her conduct impedes the normal breathing or circulation of another person." The state objected and asked that the court add "could" before "impede", *i.e.*, that knowingly means defendant acted with an awareness that his conduct "could impede" the victim's normal breathing

or circulation. The trial court agreed with the state and instructed the jury that it could find defendant guilty if it concluded that he acted with an awareness that his conduct "could impede" the victim's breathing.

On appeal, the parties agree that the "knowingly" mental state applies to and directly modifies "impede." *State v. Schodrow*, 187 Or App 224, 229, 66 P3d 547 (2003). They also agree that the definition of "knowingly" set forth in ORS 161.085(1) applies. But, as they did below, they disagree over the trial court's inclusion of the term "could." Defendant maintains that the state was required to prove that defendant was acting with an awareness that he was impeding her breathing, not that he "could" have done so. For its part, the state argues that, under ORS 161.085(8), the state needed only to show that the defendant's conduct was of a nature to impede the victim's circulation or breathing and "that is all that the addition of 'could' clarified[.]"

Under the plain terms of ORS 161.085(8), the state is incorrect. To act "knowingly" means that the person acts with an awareness that their "conduct is of a nature so described or that a circumstance so described exists." ORS 161.085(8). The statute is written in definitive, not potential terms—the conduct "is" of a nature so described or the circumstance "exists"—the nature or circumstance here being the impeding of breath. "Could" is not itself a definitive term; it suggests that possibility alone would suffice. Framed slightly differently, under the instruction as given, the jury may have found that defendant's conduct was in fact of such a nature as to impede the victim's breathing or it may have found that it was merely possible that it did. Yet ORS 161.085(8) requires that the state prove that defendant knew that he was impeding the victim's breathing; conversely, it is not an accurate statement of law to suggest that the jury could convict defendant if it found that he may— or could—have done so. The trial court therefore erred in not instructing the jury as defendant requested. Because that error was not harmless, we reverse and remand with respect to Counts 7, 12 and 15.[1]

---

[1] Our resolution on defendant's sixth assignment of error necessarily also resolves his fifth assignment of error.

## NONUNANIMOUS JURY INSTRUCTIONS
## AND VERDICTS

In assignments of error seven through 12, defendant argues that the trial court erred when it instructed the jury that it could return nonunanimous verdicts and in accepting nonunanimous verdicts on four counts. The state concedes that counts 5, 10, 11, and 14—upon which the jury reached nonunanimous verdicts—must be reversed in light of *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). We agree and accept the state's concession as to those counts.

Defendant is not, however, entitled to reversal of any convictions that were based on unanimous guilty verdicts. *See State v. Flores Ramos*, 367 Or 292, 334, 478 P3d 515 (2020) (where a jury poll showed that the verdict was unanimous, any error in instructing the jury that it could reach nonunanimous guilty verdicts was harmless and did not amount to structural error). Because the jury returned unanimous guilty verdicts on Count 6, we affirm the judgment as to Count 6.[2]

## FIRST MOTION TO SUPPRESS EVIDENCE[3]

In his first assignment of error, defendant contends that the trial court erred when it denied his motion to suppress evidence discovered after officers obtained a warrant for and reviewed the surveillance camera footage because, according to defendant, the warrant had expired or, alternatively, the search was warrantless because the officer had already filed the return of warrant. We review the trial court's denial of defendant's motion to suppress for legal error. *State v. Northcutt*, 246 Or App 239, 245, 268 P3d 154 (2011). We are bound by the court's findings of historical fact if there is constitutionally sufficient evidence in the record

---

[2] Although the jury also reached unanimous verdicts on counts 7, 12 and 15, we have reversed those convictions based on an erroneous strangulation jury instruction, *see* 319 Or App at 233.

[3] Even though we have reversed and remanded several of defendant's convictions to which the motions pertain, we nonetheless address the claims related to the motions to suppress because they involve issues likely to arise on remand. *State v. Savage*, 305 Or App 339, 342, 470 P3d 387 (2020) (citing *Westwood Construction Co. v. Hallmark Inns*, 182 Or App 624, 50 P3d 238, *rev den*, 335 Or 42 (2002)).

to support them. *State v. Love-Faust*, 309 Or App 734, 736, 483 P3d 45, *adh'd to as modified on recons*, 311 Or App 756, 489 P3d 149 (2021). We thus set out the facts consistently with the trial court's explicit and implicit findings and its decision denying defendant's motion to suppress. *Id.* For the reasons set forth below, we conclude that the trial court correctly denied the motion to suppress.

Officers obtained and executed three separate warrants in this case. Although it is the second warrant that is relevant to this claimed error, we describe the first warrant to give context to the second. The dates that officers obtained the warrants, the dates that officers executed them, and the dates enumerated in the warrants themselves are critical to resolution of this claim of error and we thus describe them in detail as well. On December 5, 2016, the day after police responded to the assault, police applied for a warrant to seize the surveillance camera system in defendant's home. In the affidavit, Officer Rosales described the incident from the previous day and stated that the victim had described defendant as having a surveillance system inside and outside of the house. Rosales indicated that the victim believed that the cameras could have captured the assaults from both December 1 and 4. A court issued the warrant and an officer seized the surveillance system, which consisted of a hard drive.

Rosales then applied for a "follow-up" warrant (the second warrant) on December 28, 2016, to allow police to forensically examine the surveillance system hard drive. The warrant, signed the same day, authorized a search of data saved from November 30, 2016 to December 6, 2016. The warrant required execution within five days from date of issuance. *See* ORS 133.565(3) (requiring execution of warrant within five days of issuance). Rosales then provided the surveillance system hard drive to a detective to conduct a forensic search. Rosales provided a "return of search warrant" to the court on January 3, 2017, which described that he had executed the warrant on December 28 by delivering the hard drive to the detective. The search warrant return also had an attached inventory of the items that officers had seized from defendant, including the surveillance system hard drive.

The detective who attempted to conduct the forensic search was unable to do so because the hard drive had its own proprietary software. The detective then gave the hard drive to a forensic analyst. That analyst, Demings, began her search on January 24, 2017, and completed the search on February 10, 2017. Demings recovered video evidence of defendant assaulting the victim on December 1, 2, 3, and 4, 2016.

Defendant moved to suppress the video surveillance evidence as a product of an unlawful forensic examination. Defendant argued that the forensic examination was conducted after the warrant authorizing it had expired, *i.e.*, five days after issuance. That was so because, in his view, the search of the hard drives was not complete until February 10. He also argued that the search of the system was warrantless because it occurred after the police had filed the return on the warrant. The trial court denied the motion.

On appeal, defendant reprises those same two arguments. As to the question whether the warrant had expired at the time of execution, defendant concedes, and we agree, that our recent decision in *State v. Monger*, 306 Or App 50, 472 P3d 270, *rev den*, 367 Or 291 (2020) controls. In *Monger*, we concluded that ORS 133.565(3)'s requirement that a warrant be executed within five days of issuance did not mean that all acts authorized by the warrant must be completed. *Id.* at 61. Rather, we concluded that the warrant had been timely executed because the officer in *Monger* had sent a copy of the warrant to a forensic analyst within the statutory time frame and asked that that analyst search the electronic devices pursuant to the warrant. *Id.* That conclusion held, notwithstanding the fact that the forensic analyst did not take any further action until a month later. *Id.* at 56-57. Simply put, "executed" for purposes of ORS 133.565(3) "does not require completion of every action authorized by a search warrant." *Id.* at 61.

This case is not meaningfully different, factually or legally, from *Monger*. Rosales timely executed the warrant under ORS 133.565(3) by delivering the surveillance system hard drive to the detective to conduct a forensic search on the same day that the court issued the warrant.

Defendant goes on to argue, however, that *Monger* does not control the outcome of his related argument, namely, that police lost authority to continue searching the hard drive after Rosales returned the warrant on January 3, 2017. Defendant contends that, by returning the warrant, Rosales conveyed that the search had been conducted and the warrant should be allowed to expire; any search after that time is, according to defendant, unlawful.

Although defendant is correct that *Monger* did not address that precise question, our reasoning in that case did so to some extent. As noted, in *Monger*, we construed ORS 133.565(3)[4] and held that "execution" "does not require completion of every action authorized by a search warrant." 306 Or App at 61. Subsection (2)(d) of that same statute provides that the warrant must describe the "period of time, not to exceed five days, after execution of the warrant * * * within which the warrant is to be returned to the issuing authority." ORS 133.565(2)(d). Relatedly, ORS 133.615 requires an officer who has "executed a search warrant" to return the warrant to the issuing judge "together with a signed list of things seized and setting forth the date and time of the search."

Both statutes thus refer to "execution" of a search warrant, followed by a return. Given that we have held that ORS 133.565(3) does not require a search under an executed warrant to be complete within the statutory time frame, it would be anomalous for us to construe the warrant return requirement as requiring officers to have completed the search (or lose the ability to continue the search) within the statutory time frame. Consistent with our reasoning in *Monger*, Rosales was thus not required to have completed the search at the point that he returned the warrant. Rather, it was enough that the search had commenced within the statutory time frame, triggering the obligation to return the warrant.[5]

---

[4] Under ORS 133.565(3), "Except as otherwise provided herein, the search warrant shall be executed between the hours of 7 a.m. and 10 p.m. and within five days from the date of issuance."

[5] We see no basis to construe "execution" as that term is used in ORS 133.615 differently from that in ORS 133.565.

As we have already concluded, Rosales executed the warrant within the statutory time frame. Given that he had done so, he then returned it, along with the list of the things that he had seized and the date and time that the search began, in compliance with ORS 133.565 and ORS 133.615. We therefore conclude that the trial court properly denied defendant's first motion to suppress.

## SECOND MOTION TO SUPPRESS EVIDENCE

Defendant also appeals from the denial of a second motion to suppress, which is related to the third search warrant. As noted above, the second search warrant sought evidence of crimes from November 30 to December 6. When reviewing the video recordings pursuant to that second warrant, police saw recordings of violence that occurred on December 2 and 3. Although the trial court rejected defendant's argument that the search was invalid because the second search warrant had been returned, *see* 319 Or App at 236, the trial court agreed with defendant that the second search warrant failed to establish probable cause for the search of those two days and granted defendant's motion to suppress with respect to that evidence.

Police then obtained a third warrant after the trial court suppressed the evidence of defendant's assaults on those two days. That warrant sought to authorize the search and seizure of "ALL video images captured or recorded *** on December 1st, 2nd, 3rd, and 4th, 2016." A magistrate authorized that warrant. Defendant again moved to suppress the evidence of the recordings on December 2 and 3, arguing that police had relied upon and exploited the unlawfully seized videos in obtaining the third warrant and the warrant was unsupported by probable cause. The trial court denied the motion. Defendant now appeals from that ruling. We affirm.

Because the contents of the officer's affidavit are critical to resolving both of defendant's arguments in this assignment of error, we describe it in some detail. Rosales submitted an affidavit in support of the third search warrant. He outlined his training and experience, including no fewer than 300 calls related to domestic violence. He stated

that he has attended trainings on domestic violence, which have taught him about the dynamic nature of domestic violence. Of significance here, Rosales described that domestic violence abusers will use video or audio surveillance to monitor their victims, and that domestic violence can build over time and can last for days at a time. Rosales described that the conflict "can go from physically abusive to forgiving to emotional manipulation, then back to physical abuse. This can occur for days at a time without the parties ever separating." According to Rosales, the time before and after physical abuse is "vital in understanding the actual physical abuse":

> "I know that if a home surveillance system is set up and has recorded a specific instance of physical abuse that the events captured on that same device in the days before, and the days following the abuse will shed light on the relationship, and can provide details as to the power and control exercised by the abuser against the victim."

Rosales also described the specific events that gave rise to his request for the warrant. Police responded to the call on December 4 and spoke with the victim about defendant's assaults. The victim explained that defendant's home was equipped with a home surveillance system, with cameras mounted around the property. The victim also described an incident that took place on December 1, in which defendant knocked her to the ground and kicked her. Before doing that, defendant had unplugged the video equipment that would have captured the conduct. Rosales asked the victim "if there would be other incidents of physical abuse captured on these cameras." The victim responded by stating that "the cameras should have captured other incidents of abuse." Officers at defendant's residence independently observed cameras.

Rosales went on to explain the procedural history of the case, specifically that he had sought two previous search warrants. He acknowledged that the second search warrant produced evidence that a trial court subsequently suppressed, namely, the incidents on December 2 and 3. Rosales also acknowledged that he could not "un-see" the videos that were suppressed. But Rosales expressly averred that he "did NOT rely on any portion of the video[.]" (Uppercase

in original.) Rosales also explained that he understood that his previous affidavit had not sufficiently explained that his training and experience led him to believe that events in and around those dates of physical violence "would be evidence of the power and control that is often demonstrated in this type of case." He went on to state that, based on his training and experience, he believed that the "interaction that would have been recorded on December 1, 2, 3, and 4, 2016 would all shed light as to why, and how [defendant] committed the assaultive behavior described by [the victim.]"

A magistrate signed the warrant and police executed it.

As noted, defendant moved to suppress, arguing that the warrant was an impermissible attempt to cure the deficiencies that were the subject of the first motion to suppress hearing and that the third warrant cannot be viewed as an independent source of the evidence. Alternatively, defendant argued that the warrant failed to establish probable cause for the search.[6] The trial court denied the motion, ruling that the state was not prohibited from seeking a third warrant after the motion to suppress and that the affidavit contained additional information that established probable cause.

On appeal, defendant reprises his arguments that the third warrant was the product of unlawful taint and, alternatively, was unsupported by probable cause, both in violation of Article I, section 9, of the Oregon Constitution.[7]

We first address whether the third warrant was tainted by the unlawful search conducted under the second

---

[6] The state cross-assigns error to the trial court's suppression of evidence discovered during the search under the second warrant. Because we conclude that the trial court did not err in denying defendant's second motion to suppress, we need not reach the cross-assignment of error.

[7] We reject defendant's argument that *State v. Mansor*, 363 Or 185, 221, 421 P3d 323 (2018), stands for the proposition that, once the trial court suppressed evidence under the second warrant, the state was prohibited from ever using that evidence. There, the Supreme Court concluded that the state could not use information obtained in a computer search "if the warrant did not authorize the search for that information[.]" *Id*. But that prohibition applies only where a warrant does not authorize the search for the evidence; it does not address the situation here, namely, whether a defendant is entitled to suppression when a warrant unquestionably authorized the search but was preceded by an unlawful search.

warrant. "When a defendant seeks to suppress evidence discovered in a legally authorized search on the basis of a prior illegality, the focus of the inquiry is not on the legality of the act providing authority to search, it is on the effect that the prior illegality may have had on the authorized search." *State v. DeJong*, 368 Or 640, 654, 497 P3d 710 (2021). One way to demonstrate that the warranted search is "wholly independent" is through the independent source doctrine. *State v. Johnson*, 335 Or 511, 519, 73 P3d 282 (2003) ("The independent source doctrine permits the introduction of evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality.") (Internal quotation marks and citations omitted.). "So long as a later, lawful [state activity] is genuinely independent of an earlier, tainted one * * * there is no reason why the independent source doctrine should not apply." *Murray v. United States*, 487 US 533, 542, 108 S Ct 2529, 101 L Ed 2d 472 (1988); *see also Johnson*, 335 Or at 519, 521-22 (accepting *Murray*'s articulation of the independent source doctrine for Article I, section 9, purposes).

The analytical framework involves two steps: Defendant must first establish a minimal factual nexus between the previous illegality—here, the search conducted under the second warrant—and the evidence discovered under the third. *Johnson*, 335 Or at 519. The burden then shifts to the state to demonstrate that the evidence obtained during the warranted search had an independent source. *Id.*

The parties do not dispute that defendant has met his initial burden. And we agree with the trial court that the state met its burden of showing that the evidence obtained under the third warrant is independent of any previous illegality.[8] Notably, the second warrant sought evidence for videos beyond the two specific dates that the victim had identified; it sought to examine the surveillance tapes for evidence of crimes from November 30 through December 6, 2016. That necessarily means that Rosales was interested in evidence

---

[8] No dispute exists that the state lawfully seized the hard drive containing the videos. Thus, the only question we must resolve is whether the search conducted under the third warrant was also lawful.

from December 2 and 3 before he saw the videos that a trial court later suppressed. In other words, this may well have been a different case had the execution of the second warrant led to discovery of evidence that was not contemplated in the second warrant. But the second warrant, like the third, contemplated the broader date range. Additionally, Rosales explained that, in applying for the third warrant, he did not rely on the videos that were searched unlawfully.[9] Rather, according to him, he was providing the court with additional information about his training and experience, as well as additional facts that he had as of the time of the second warrant.

Rosales thus did not seek the third warrant because of what was discovered because of the prior illegality, nor did he use any information obtained because of the prior illegality to obtain that warrant. We therefore conclude that the state met its burden of showing that the third warrant was an independent source of the evidence, so long as the affidavit in support of the warrant established probable cause.

We agree with the trial court that it did. "Probable cause exists when the facts, as set forth in the affidavit, along with any reasonable inferences, could permit a neutral and detached magistrate to determine that seizable evidence probably would be found at the place to be searched." *State v. Van Osdol*, 290 Or App 902, 907-08, 417 P3d 488 (2018) (internal quotation marks and citations omitted). Probable cause itself requires "less than a certainty, but more than a mere possibility." *Id.* at 908. Doubtful or marginal cases are to be resolved in favor of the preference for warrants. *State v. Henderson*, 341 Or 219, 225, 142 P3d 58 (2006). "Statements in the affidavit that are derived from an officer's training and experience" may be considered, but "the officer's knowledge must be connected to the facts of a particular case and the knowledge itself must be examined[.]" *State v. Cannon*, 299 Or App 616, 626, 450 P3d 567 (2019) (internal citations omitted).

---

[9] Defendant asserts that Rosales' statements were "unconvincing." We do not understand defendant to challenge the truth of the facts in the affidavit; nor did he move below to controvert statements in the affidavit. Our role on appeal is not to assess the credibility of Rosales. We therefore decline to do so.

We review a trial court's determination of probable cause to support a warrant for legal error. *Van Osdol*, 290 Or App at 907. We examine the affidavit in a commonsense and realistic fashion, taking into account both facts and inferences, and we resolve doubtful cases in favor of warrant validity. *Id.* at 908.

The facts set forth in Rosales's affidavit were objectively sufficient to establish probable cause that evidence of defendant's crimes would be found on the surveillance systems videos for December 2 and 3. Importantly, and contrary to defendant's argument on appeal, this is not a case in which the only basis for the warrant rests on the affiant's training and experience. To be sure, Rosales set forth his training and experience in great detail. He explained that domestic violence often takes place over days at a time, that abuse is often preceded and followed by a buildup in tensions. He averred that his training and experience taught him that the time before and after physical abuse is "vital in understanding the actual physical abuse" and that if the house has a surveillance system and "has recorded a specific instance of physical abuse that the events captured on that same device in the days before, and the days following the abuse will shed light on the relationship, and can provide details as to the power and control exercised by the abuser against the victim." But Rosales then went on and linked his experience and training with the facts of the case. *See Cannon*, 299 Or App at 626. He explained that the victim described defendant as having surveillance cameras and officers were able to confirm that visually. The victim told officers that defendant had unplugged the surveillance camera that would have captured abuse that took place on December 1. And critically, the victim stated that "the cameras should have captured other incidents of abuse[.]" Taken together, Rosales's training and experience, along with the particular facts of the case, established probable cause that evidence of crimes would be found on the December 2 and 3 videos.

In that way, this case is distinguishable from those where we have concluded that the officer's recitation of training and experience was not adequately linked with the facts of the particular case. For example, in *State v. Cazee*,

308 Or App 748, 482 P3d 140 (2021), we concluded that the affidavit was insufficient to establish probable cause to search the defendant's cell phone. There, police received reports of a person looking into windows over the course of several months. *Id.* at 751-52. Police eventually arrested the defendant and charged him with criminal trespassing. *Id.* at 752. At the time of his arrest, the defendant possessed, among other things, a cell phone. *Id.* Police sought a search warrant for the cell phone, based on the officer's training and experience that people used personal electronic devices, like cell phones, to aid in the commission of their crimes and that voyeurs in particular often record their victims. *Id.* at 752-53. We concluded that the warrant did not establish probable cause to search the defendant's phone: no one had reported seeing the defendant using a cell phone during any of the peeping incidents and the affiant's training and experience that criminals often use cell phones to aid in their crimes could not, without more, give rise to probable cause. *Id.* at 760-61. We noted that even a single report of the defendant using a cell phone during his crimes may have been enough to tip the scale to probable cause. *Id.* at 761.

Here, Rosales's affidavit provides the critical link between training and experience and the specific facts of the case that the affidavit in *Cazee* did not. Although Rosales's training and experience gave him a base of knowledge about domestic violence dynamics, he linked that training and experience to the facts of the case by verifying that defendant had a surveillance system, that the victim reported both that defendant unplugged the camera before one of the acts of abuse, and that the system likely captured evidence related to other incidents. Finally, even if there were any doubt, our standard of review dictates that "we resolve doubtful cases in favor of the preference for warrants." *State v. Chamu-Hernandez*, 229 Or App 334, 343, 212 P3d 514, *rev den*, 347 Or 43 (2009).

Convictions on Counts 5, 7, 10, 11, 12, 14, and 15 reversed and remanded; remanded for resentencing; otherwise affirmed.