Argued and submitted October 28, 2014, affirmed March 18, petition for review denied June 4, 2015 (357 Or 324)

In the Matter of D. C.,
a Youth.

STATE OF OREGON,
*Petitioner-Respondent,*

*v.*

D. C.,
*Appellant.*

Malheur County Circuit Court
8628J;
Petition Number 8628J02;
A150053

346 P3d 562

Christa Obold-Eshleman argued the cause and filed the briefs for appellant.

Pamela J. Walsh, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

**TOOKEY, J.**

Youth appeals a juvenile court judgment finding him within the jurisdiction of the court for committing acts, which, if committed by an adult, would constitute burglary in the first degree, ORS 164.225,[1] and theft in the second degree, ORS 164.045.[2] He assigns error to the court's denial of his motion to suppress evidence that was discovered during a search of his backpack incident to his arrest, arguing that that search was unlawful because the arresting officers lacked subjective and objective probable cause to believe that he had committed a crime. We write to address only youth's contention that the officers lacked objective probable cause to believe that he had committed a crime, review for legal error,[3] and affirm. *See State v. Mitchele*, 240 Or App 86, 88, 251 P3d 760 (2010) ("We review the denial of a motion to suppress for legal error and defer to the trial court's findings of historical fact if there is sufficient evidence to support them.").

The following factual summary is based upon the facts that were presented to the juvenile court at the suppression hearing. *See State v. Pitt*, 352 Or 566, 575, 293 P3d 1002 (2012) ("If a party rests his or her argument on appeal on a trial court's pretrial order declining to exclude certain evidence, we ordinarily will evaluate that argument in light of the record made before the trial court when it issued the

---

[1] ORS 164.225(1) provides, in part, that "[a] person commits the crime of burglary in the first degree if the person violates ORS 164.215 and the building is a dwelling[.]" In turn, ORS 164.215 provides, in part, that "a person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein."

[2] ORS 164.045 provides, in part, that "[a] person commits the crime of theft in the second degree" if "the person commits theft as defined in ORS 164.015" and the "total value of the property in a single or aggregate transaction is $100 or more and less than $1,000." In turn, ORS 164.015 provides, in part, that "[a] person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person * * * [t]akes, appropriates, obtains or withholds such property from an owner thereof[.]"

[3] Youth requests that we exercise our discretion to review the record *de novo*. *See* ORS 19.415(3)(b) (the Court of Appeals may, in its sole discretion, review an equitable case *de novo*). However, this is not an "exceptional case." *See* ORAP 5.40(8)(c) ("The Court of Appeals will exercise its discretion to try the cause anew on the record or to make one or more factual findings anew on the record only in exceptional cases."). Thus, we decline to exercise our discretion to review the record *de novo*.

order, not the trial record as it may have developed at some later point."). The police were called to investigate a residential burglary involving the theft of an Xbox. Three officers reported to the victim's residence: Toll, Harnden, and Ballou. Ballou was a patrol officer and school resource officer who knew youth because he had "dealt with him in the past" regarding in-school discipline issues.

Toll asked the victim if he knew who may have taken the Xbox, and the victim, who knew youth, identified youth by name. The victim suspected youth because he had "seen him by his house during that time when [the crime] could have occurred[.]" The victim gave the officers a description of youth, stating that youth was wearing a blue jacket, black pants, black shoes, and a backpack. The victim also pointed to youth's house, which was two or three blocks away. Toll and Harnden went looking "for a subject matching the description that [the victim] gave [them]." Ballou "went looking for the suspect that he [knew] as [youth]."

Only a "short * * * time" after the call came in to the police to investigate the residential burglary, and approximately 10 minutes after the officers had interviewed the victim, Ballou saw youth walking down a sidewalk "a block to two blocks" from the victim's house. The victim's description of youth was "consistent with what [youth] was wearing." Ballou contacted Toll and Harnden, who parked a half block away from youth and began walking toward him. Ballou pulled his vehicle over near the curb, alongside youth.

Youth was wearing "an average size backpack" that could "reasonably contain a[n] Xbox console." As Ballou was pulling over alongside youth, youth took off the backpack, dropped it behind him near a fence, and took "a step or two away" from it. Ballou got out of his vehicle and initiated a discussion with youth.

Toll and Harnden then approached youth, and Toll asked youth "questions about what [the victim] had told [him] to verify that [youth] was indeed in * * * that area during that time that the Xbox was taken from the residence." Specifically, Toll asked youth if he knew the victim, and youth replied, "Yes." Toll also asked youth if he had ever played Xbox with the victim, and youth replied, "Yes." Toll

also asked youth if he had been at the victim's house that day, and youth replied, "Yes." Toll then asked youth how long ago he had been at the victim's house, and youth replied that he had been there "about an hour ago." Finally, Toll asked youth if he had the victim's Xbox, and youth then asked to speak to Ballou.

Ballou then confronted youth, telling him that the victim had named him as a suspect and asking him whether he had the victim's Xbox. After further questioning, youth admitted that he had the victim's Xbox, agreed to open the backpack, and showed the Xbox to the officers. The officers advised youth that he was under arrest, placed him in a patrol car, and took him to the police station, where he was given *Miranda* warnings for the first time.

After a petition was filed to adjudicate youth within the jurisdiction of the juvenile court for first-degree burglary and second-degree theft, youth moved to suppress the statements that he made to the officers and the evidence that was discovered during the search of his backpack, arguing that the officers, when questioning him on the sidewalk, failed to give him *Miranda* warnings. Accordingly, youth argued, the court should suppress youth's statements and conclude that his consent to the search of the backpack was invalid.

During a hearing on youth's motion to suppress, Toll stood and demonstrated youth's acts of removing the backpack and dropping it near the fence. Specifically, Toll testified that youth "was walking like this with a few straps over his shoulders, the backpack directly behind him on his back[,]" and that when youth "looked over and [saw] Officer Ballou pulling up, he grabbed his backpack off his shoulder and went in this motion and dropped the backpack down." Toll also testified that youth took "maybe a step or two away from [the backpack] after he dropped it." Toll "thought that that was kind of unusual for someone to just drop the backpack as they see an officer approach them, and step away from it[,]" and he wondered if youth was trying to "get rid of possible evidence[.]"

Ballou testified that he thought that youth "was distancing himself from the backpack, either to lighten his load, to make it easier for him to move * * * or to just

distance himself away from ownership of the backpack[.]" In addition, Ballou testified that he believed that he had probable cause to arrest youth, prior to his questioning of youth, based on the following facts:

> "the statements of the victim that he knew it was [youth], that he'd seen him by his house during that time * * * when it could have occurred, the short duration of time between us finding him and * * * the call coming in to us, * * * his distancing himself from the backpack and * * * the furtive gestures * * * with the backpack."

Based on the officers' testimony, the juvenile court first found that the officers had probable cause to arrest youth. Specifically, the court stated that the officers "knew they were looking for this particular person. He was in the area, the furtive gesture, and Officer Toll made enough inquiry to determine that this was the person, the [youth] they were looking for." The court then suppressed any statements that youth made to the officers after Ballou confronted youth, on the ground that *Miranda* warnings were required and not given at that time. For the same reason, the court concluded that youth's consent to the search of the backpack was invalid.

Although the court suppressed the statements that youth made to Ballou after Ballou confronted youth and concluded that youth's consent to the search was invalid, the court found that the officers had probable cause to arrest youth and that they would have arrested him regardless of his statements to Ballou. Accordingly, the court concluded that the evidence in the backpack—specifically—the Xbox— would have been inevitably discovered during a search incident to youth's arrest. Pursuant to the court's ruling, testimony concerning the evidence that was discovered during the search of youth's backpack was later admitted into evidence, and the juvenile court adjudicated youth within the jurisdiction of the court for first-degree burglary and second-degree theft. Youth now appeals.

On appeal, youth contends that the juvenile court erred in denying his motion to suppress the evidence that was discovered during the search of his backpack, contending that the search was not justified as a search incident

to arrest because, before Ballou confronted youth, the officers lacked objective probable cause to believe that youth had committed a crime. To support that contention, youth argues that his "mere presence near his own house and also near a house which was burglarized, is insufficient to support a reasonable belief that the youth was involved in the burglary." Youth also argues that the victim's "unexplained suspicion of the youth does not add to the reasonable belief." In addition, youth contends that his conduct was "not sufficiently 'furtive' to create probable cause[.]" Thus, according to youth, "[t]he totality of the circumstances (the youth being near the [victim's] (and his own) home, and that the youth dropped his backpack when talking to the officers) provides insufficient grounds for an objectively reasonable belief that it was more likely than not that the youth had committed the crime."

Under Article I, section 9, of the Oregon Constitution,[4] a police officer may conduct a search incident to arrest if the search "relates to a crime which there is probable cause to believe the arrestee has committed, and when it is reasonable in all the circumstances." *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). "Probable cause under the Oregon Constitution has both a subjective and an objective component." *Id.* First, "[a]n officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure." *Id.* Second, "this belief must be objectively reasonable in the circumstances." *Id.* "The subjective component of the probable cause inquiry is satisfied if an officer believes that he or she has lawful authority to restrain the individual's liberty."[5] *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009). The objective component is satisfied if the state "establish[es] that the facts objectively are sufficient to establish probable cause." *Id.* To determine "whether the state has established that the facts objectively are reasonable, the court looks at the totality of the

---

[4] Article I, section 9, provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

[5] We reiterate that, in this case, we write to address only youth's contention that the officers lacked *objective* probable cause to believe that he had committed a crime.

circumstances," *id.*, which are "known to the officer at the time of the arrest, viewed in light of the officer's experience," *State v. Martin*, 260 Or App 461, 471, 317 P3d 408 (2014); *see also State v. Rayburn*, 246 Or App 486, 492, 266 P3d 156 (2011) ("To establish probable cause, as opposed to guilt, the state needs to prove only that, *more likely than not*, defendant had the requisite mental state. That is a significantly less rigorous standard." (Internal citation omitted; emphasis in *Rayburn.*)).

To the extent that youth argues that his conduct was "not sufficiently 'furtive'" to add to a finding of probable cause, his argument is unpersuasive. First, we observe that there is evidence to support the juvenile court's conclusion that youth made a furtive gesture. Specifically, there is evidence that youth dropped the backpack and stepped away from it in an apparent attempt to "distanc[e] himself from the backpack[.]" We note that a furtive gesture, alone, does not give rise to probable cause for an arrest. *State v. Jacobs*, 187 Or App 330, 335, 67 P3d 408 (2003) ("Mere furtiveness * * * does not establish probable cause."). However, "[f]urtive movements *may add to* a finding of probable cause when they are contemporaneous with the officer's observations of other information consistent with criminal activity." *Id.* (internal quotation marks omitted; emphasis added); *see also State v. Flores*, 58 Or App 437, 648 P2d 1328 (1982) (concluding that the defendant's furtive gestures, combined with his attempts to conceal a baggie from the officer's view, provided probable cause to seize the baggie). Thus, youth's "furtive gesture" may add to a finding of probable cause, when viewed in combination with the other circumstances known to the officers before Ballou confronted youth.

Based on the totality of the circumstances known to the officers before Ballou confronted youth, we conclude that the officers had an objectively reasonable basis to believe that youth had committed a crime. In this case, the officers' objectively reasonable basis for that belief may be based on the evidence which was not excluded by the court and which was known to the officers when youth was arrested, including youth's admissions to Toll. When the officers went looking for youth, they knew, based on the victim's statement, that the victim's Xbox had been stolen. They also knew that

the victim, who knew youth, had identified youth by name as the person who had stolen the Xbox, had stated that he had "seen [youth] by his house during that time when [the crime] could have occurred," and had described what youth was wearing. When the officers located youth, approximately 10 minutes after they interviewed the victim, they obtained information that potentially corroborated the victim's statement—that is, they observed that youth was walking near the victim's house, that the victim's description of youth was "consistent with what [youth] was wearing[,]" and that youth was wearing "an average size backpack" that could "reasonably contain a[n] Xbox console." The officers obtained more information when they observed youth making "furtive gestures" with the backpack in an apparent attempt to "get rid of possible evidence" or "distance himself" from the backpack. Finally, the officers obtained additional information when Toll asked youth questions to verify what the victim had told him: that youth knew the victim, the owner of an Xbox console, equipment, and games; that youth had played with the victim's Xbox; and that, about an hour previously, youth had been at the victim's house. The totality of the circumstances, when viewed together, establish an objectively reasonable basis for the officers to believe that youth had stolen the victim's Xbox.

In sum, based on the totality of the circumstances known to the officers before Ballou confronted youth, we conclude that the officers had probable cause to arrest youth—that is, they had an objectively reasonable basis to believe that youth had committed a crime. The juvenile court did not err in denying youth's motion to suppress the evidence that was discovered during a search of his backpack.[6]

Affirmed.

---

[6] Youth also notes that the trial court deemed the challenged evidence admissible on two alternative theories—inventory search and exigent circumstances—and argues that neither theory serves as a basis for admissibility. Our disposition of this case makes it unnecessary for us to address those arguments.