Argued and submitted December 13, 2019; convictions for using a child in a display of sexually explicit conduct, ORS 163.670, reversed, remaining convictions reversed and remanded, otherwise affirmed January 27, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KIRK RICHARD CAZEE,
*Defendant-Appellant.*

Clatsop County Circuit Court
17CR22218; A167047

482 P3d 140

Defendant appeals a judgment of conviction for numerous counts of invasion of personal privacy, stalking, criminal trespass, and using a child in a display of sexually explicit conduct. Defendant was arrested as a suspect in a yearlong string of peeping tom incidents in a residential community on the coast. The sheriff's office had received multiple reports of incidents in which a teenaged girl or young woman saw someone spying through a window while she was undressed or engaged in sexual activity. One of the victims installed a video surveillance system, which led to defendant's arrest. At the time of his arrest, defendant was carrying a cell phone. A detective obtained a warrant to search the cell phone for digital images and videos, which led to the discovery of incriminating evidence. Using the evidence from the cell phone, further warrants were obtained to search defendant's residences and vehicles, which led to the discovery of further incriminating evidence. Before trial, defendant moved to suppress the evidence, arguing that the warrants were not supported by probable cause, which motion was denied. At trial, defendant moved for judgments of acquittal on various counts, which motions were also denied. On appeal, defendant challenges the denial of his motion to suppress, as well as the denial of his motions for judgments of acquittal as to one trespass count and six display counts. *Held*: The trial court erred in denying defendant's motion to suppress the cell phone evidence, and the derivative evidence obtained with later warrants, because there was nothing to link defendant's cell phone to his suspected crimes. The peeping tom had never been seen using a cell phone in any way during his crimes, nor was defendant seen using his cell phone on the night of his arrest. As for denying defendant's motions for judgment of acquittal, the trial court did not err as to the trespassing count, but it erred as to the six display counts. Under the proper construction of the statute, the evidence was insufficient to prove the crime of display.

Convictions for using a child in a display of sexually explicit conduct, ORS 163.670, reversed; remaining convictions reversed and remanded; otherwise affirmed.

Dawn M. McIntosh, Judge.

Andy Simrin argued the cause for appellant. Also on the brief was Andy Simrin PC.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Convictions for using a child in a display of sexually explicit conduct, ORS 163.670, reversed; remaining convictions reversed and remanded; otherwise affirmed.

**AOYAGI, J.**

In 2016 and 2017, the Clatsop County Sheriff's Department investigated multiple reports of a peeping tom watching young women or teenaged girls through their windows at night, including while they engaged in sexual activity. All of the incidents occurred in Surf Pines, a gated residential community on the coast. Defendant was arrested in February 2017 after one of the victims, who had installed a surveillance system, reported someone on her property. At the time of his arrest, defendant was carrying binoculars, toilet paper, a flashlight, and a cell phone. A detective obtained a warrant to search the cell phone, which led to the discovery of over 7,200 photographs and 70 videos, including some depicting teenaged girls engaged in sexual activity. Using the evidence from the cell phone, further warrants were obtained, which led to the seizure of further incriminating evidence.

Defendant was indicted on numerous counts. Before trial, he moved to suppress all of the aforementioned evidence, arguing that the warrants were not supported by probable cause. The trial court denied the motions. A jury subsequently found defendant guilty of five counts of first-degree invasion of personal privacy, ORS 163.701; three counts of second-degree invasion of personal privacy, ORS 163.700; five counts of stalking, ORS 163.732; four counts of second-degree criminal trespass, ORS 164.245; and six counts of using a child in a display of sexually explicit conduct, ORS 163.670. Defendant had moved for judgments of acquittal on one trespass count and all six display counts, but the trial court denied those motions.

On appeal of the judgment of conviction, defendant raises four assignments of error. He contends that the trial court erred in denying, respectively, (1) his motion to suppress the photographs and videos found on his cell phone, (2) his motion to suppress the evidence seized from his residence and camper, (3) his motion for judgment of acquittal on the display counts, and (4) his motion for judgment of acquittal on one trespass count. We reject the fourth assignment of error, regarding the trespass count, without written discussion. For the reasons that follow, however, we agree with

defendant that the trial court erred in denying his motions to suppress and his motion for judgment of acquittal on the display counts. Accordingly, we reverse and remand.

## I.  MOTION TO SUPPRESS EVIDENCE FROM CELL PHONE

A.  *Facts*

On February 27, 2017, Detective Humphrey obtained a warrant to search defendant's cell phone for evidence of second-degree criminal trespass, second-degree invasion of personal privacy, and stalking, limited to data that had been created, accessed, or deleted since January 2, 2016. Because we are called upon to review the validity of that warrant, we rely on the uncontroverted facts recited in the supporting affidavit. *State v. Goodman*, 328 Or 318, 320, 325, 975 P2d 458 (1999).

Residents in the gated community of Surf Pines reported multiple peeping incidents to the sheriff's department in 2016 and early 2017. On January 2, 2016, a report was received that a man of heavy build wearing a dark hooded shirt had been watching a 17-year-old girl and her boyfriend on a bed through a residence window at 1:30 a.m. The girl thought that the man had been at the window for as long as 10 minutes. Later that year, at a different Surf Pines residence, peeping incidents were reported on September 4, November 4, and November 26. In December 2016, yet another Surf Pines resident, 22-year-old M, began to sense that someone was looking in her windows. On January 16, 2017, M reported seeing someone or something in her yard, and, on January 25, 2017, M reported seeing a figure outside her bedroom while she and her boyfriend were "being intimate." After those incidents, M installed a surveillance system.

In late January 2017, Humphrey joined the investigation of the Surf Pines peeping incidents. On February 1, 2017, Humphrey viewed surveillance footage showing a person looking through a residence window for about 28 seconds. The person was wearing a hooded coat with a distinctive loop on the back of the hood. He covered his face with his hand while passing through a lighted area and hid

when vehicle headlights came into view. On February 12, 2017, Watson, a resident of the same property where an incident had been reported on January 2, 2016, encountered an unknown man outside the house. Watson described the man as wearing a camouflage hunting jacket and having a full beard that was gray except for a black accent near the upper lip. The man claimed to be looking for someone and left without incident once confronted.

On February 16, 2017, around 10:35 p.m., M reported seeing a person on her property on her surveillance system's live feed. Two officers responded, eventually encountering defendant. Defendant lives in Surf Pines. Defendant's jacket matched the jacket of the person seen in the surveillance video that Humphrey viewed on February 1, including the distinctive loop on the back of the hood, and his physical appearance also matched. Upon reviewing M's surveillance video from that night (February 16), defendant also appeared to be the person in M's video. Defendant was arrested for criminal trespassing. At the time of arrest, he had binoculars concealed under his jacket, toilet paper in a plastic bag, a flashlight, and a cell phone. Defendant denied trespassing and stated that he walks the trails at night, carries binoculars to look at wildlife, and carries toilet paper in case he needs to go to the bathroom while walking. Defendant refused to consent to a search of his cell phone.

The next day, Watson viewed a six-photo lineup. Upon seeing defendant's photo, he stated that, "so far out of all of them, that'd be the closest." Watson indicated that there had been limited light when he confronted the man outside the house but that he had focused on the facial area and specifically the man's beard.

Based on those facts, Humphrey subjectively believed that there was probable cause to believe that defendant had criminally trespassed on multiple occasions for the purpose of viewing people in the privacy of their homes and had viewed people engaged in sexual activities without their knowledge for his own sexual gratification.

As relevant here, Humphrey further believed that defendant's cell phone data might reveal that he had recorded people without their knowledge. As described in the

affidavit, Humphrey has been a police officer for 13 years. From his training and experience (described in the affidavit), Humphrey has learned that "people involved in criminal behaviors use computers and other personal electronic devices, such as cellular telephones and tablet computers, to aid in the commission of their crimes." More specifically, he has learned "that people engaged in criminal sexual behaviors use electronic devices to collect and retain media related to their crimes such as images or videos of their victims" and "that people who practice voyeurism often use optical magnifiers such as binoculars to gain a visual advantage in viewing other people in the privacy of their own homes" and "often use their personal electronic mobile devices to record, view, and store images and videos of the people they watch."

The magistrate issued the requested warrant to search defendant's cell phone for "images and videos," including depictions of people engaged in sexual behavior and other private acts and depictions of people being viewed or recorded without their knowledge where they had a reasonable expectation of privacy.[1]

Upon execution of the warrant, more than 7,200 photographs and 70 videos were found on defendant's cell phone, some depicting teenaged girls engaged in sexual activity or in states of nudity.

Defendant was indicted on numerous counts. Before trial, he moved to suppress the evidence from his cell phone. The trial court denied the motion, stating:

> "Defendant was caught red handed, walking in the area in the middle of the night and immediately following the last incident. He was arrested carrying 'tools of the trade,' including binoculars, toilet paper, and a cellular telephone capable of recording and photographing. Parts of his actions in approaching a window at the victim's home were caught on video tape though parts remain unseen.

---

[1] We note that the warrant also authorized law enforcement to search defendant's cell phone for "location data," including global positioning information and wireless connection data, and "internet browsing data," including internet use history. Neither party discusses those aspects of the warrant, possibly because the state did not find or use any incriminating evidence of those types. In any event, like the parties, we limit our discussion to the validity of the warrant to search for images and videos.

"These facts alone, when viewed through the lens of Detective Humphrey's substantial experience and training related to people who engage in criminal sexual behavior (and voyeurism [in] *** particular) provided ample probable cause to believe that Defendant had committed the crimes listed in the affidavit and to believe that evidence of these crimes would be located on the cellular phone in Defendant's possession."

Defendant proceeded to trial. A jury found him guilty of multiple counts of invasion of personal privacy, stalking, criminal trespass, and display, as previously described. He appeals the resulting judgment of conviction, first challenging the denial of his motion to suppress the photographs and videos found on his cell phone.

B. *Legal Analysis*

Article I, section 9, of the Oregon Constitution protects the right of the people to be free of unreasonable searches and seizures and requires warrants to issue only upon probable cause. Search warrants are presumptively valid. *State v. Van Osdol*, 290 Or App 902, 907, 417 P3d 488 (2017). Defendant therefore bore the burden to establish that the warrant to search his cell phone for photographs and videos was defective, such that the photographs and videos found on it should have been suppressed. *Id.* Here, defendant argued to the trial court—and argues again on appeal—that the facts in Humphrey's affidavit were insufficient as a matter of law to establish the necessary probable cause. Defendant does not contest that the facts in the affidavit were sufficient to establish probable cause that he had committed criminal trespassing, but he disputes that they were sufficient to establish probable cause that he had committed voyeuristic crimes, and, in any event, he contends that they were insufficient to establish probable cause that evidence of any crimes would be found *on his cell phone*.

We review a trial court's determination of probable cause to support a warrant for legal error. *Id.* "When evaluating the sufficiency of a search warrant affidavit, our task is to determine whether the affidavit alleged sufficient facts to permit a neutral and detached magistrate to determine that seizable evidence probably would be found at the

place to be searched." *State v. Williams*, 270 Or App 721, 725, 349 P3d 616 (2015) (internal quotation marks omitted). We examine the affidavit in a commonsense and realistic fashion, taking into account both facts and inferences, and we resolve doubtful cases in favor of warrant validity. *Van Osdol*, 290 Or App at 908. To establish probable cause, an affidavit must "do more than allege facts that support a mere suspicion that evidence will be found; even a well-warranted suspicion does not suffice. Rather, the standard of probability requires the conclusion that it is *more likely than not that the objects of the search will be found at the specified location.*" *Williams*, 270 Or App at 725 (internal quotation marks and citation omitted; emphasis added).

As a preliminary matter, we agree with the state that the facts in Humphrey's affidavit were sufficient to establish probable cause to believe that defendant had committed not only criminal trespassing but also invasion of personal privacy in the form of peeping activities. *See Van Osdol*, 290 Or App at 908 (the affidavit must establish "a nexus between three things: (1) that a crime has been, or is currently being, committed, and that (2) evidence of that crime (3) will be found in the place to be searched"). Surf Pines—a gated residential community on the coast—had experienced a rash of peeping activity over the course of a year, with a significant number of reports in the months leading up to defendant's arrest, repeat victims, and similarities between victims. On the night of defendant's arrest, M, a repeat victim, reported seeing a person on her live surveillance feed, and defendant was found nearby. Defendant had a residence in Surf Pines. He matched the person captured on M's surveillance video. His jacket and physical appearance also matched the person captured on a different surveillance video two weeks earlier. He was carrying binoculars and toilet paper. Further, in a photo line-up the next day, a resident who had confronted a man on his property only five days earlier identified defendant as "the closest" match to the person he had seen, noting in particular defendant's distinctive facial hair.

Taken together, those facts were objectively sufficient to establish probable cause to believe that defendant had committed the crime of invasion of personal privacy at

multiple homes in Surf Pines. *See State v. D. C.*, 269 Or App 869, 874-75, 346 P3d 562 (2015) (whether probable cause for a particular crime objectively exists depends on the totality of the circumstances). And Humphrey's subjective belief is undisputed. We reject defendant's argument that the affidavit established only probable cause to believe that defendant had committed trespass on February 16, 2017.

The next question is whether the facts in Humphrey's affidavit were sufficient to create probable cause to believe that evidence of defendant's suspected crimes would more likely than not be found *on his cell phone*. A person's privacy interests in a cell phone "are equal to or surpass those of a home." *State v. Mansor*, 363 Or 185, 222, 421 P3d 323 (2018). Here, according to the facts in the affidavit, no one had ever seen the Surf Pines peeping tom using a cell phone or any type of electronic device. In defending the issuance of the warrant, the state argues that Humphrey's training and experience supplied the necessary link between probable cause to believe that defendant had committed voyeuristic crimes and probable cause to believe that evidence of those crimes would be found on defendant's cell phone. We disagree.

Humphrey's training and experience cannot bridge the gap in this case. "It is well settled that determinations of probable cause involve the totality of the circumstances in any given situation and that a law enforcement officer's training and experience are among the circumstances that can be considered." *State v. Daniels*, 234 Or App 533, 540, 228 P3d 695 (2010). However, probable cause must be based on specific and articulable facts *about the defendant*, interpreted in light of the existing circumstances and the officer's training and experience. *State v. Farrar*, 252 Or App 256, 260, 287 P3d 1124 (2012).

"In order for an attestation regarding training and experience to support probable cause, it must connect a defendant's particular conduct or circumstances with the specific evidence that police seek, and it must be supported by objective facts derived from other sources." *Daniels*, 234 Or App at 540 (internal quotation marks omitted). For example, if a defendant had in his possession paper folded

in a particular way, and an officer knew from training and experience that paper folded that way is often used to carry drugs, the officer's training and experience could provide a basis to believe that the defendant's paper contained drugs. *State v. Miglavs*, 186 Or App 420, 432, 63 P3d 1202 (2003), *aff'd*, 337 Or 1, 90 P3d 607 (2004). Thus, "an officer may consider the facts in light of the officer's training, knowledge, and experience, but that experience cannot itself supply the facts." *State v. Aguilar*, 307 Or App 457, 469, 478 P3d 558 (2020).

In *Aguilar*, we held that probable cause did not exist to believe that the defendant had committed the traffic violation of not wearing a safety belt in a vehicle operating on the highway, where an officer observed her sitting without a seatbelt in the passenger seat of a car about 10 to 12 seconds after the car left the public highway and later testified to his experience that "normal" people do not take off their seatbelts in such situations. *Id*. at 468. We held that evidence to be insufficient to create probable cause, because there were "no specific and articulable facts * * * to support the conclusion that defendant had more likely than not committed any traffic violation." *Id*. at 469. To conclude otherwise would "improperly use[] officer experience to add a fact—that defendant was not wearing a seatbelt—without any evidence in the record from which to reasonably draw that conclusion." *Id*. Because probable cause did not exist, it was error to deny the defendant's motion to suppress. *Id*. at 471.

Similarly, in *State v. Sunderman*, 304 Or App 329, 347-48, 467 P3d 52 (2020), we held that evidence should have been suppressed because the facts were insufficient to create probable cause to believe that the defendant criminally possessed methamphetamine. During a traffic stop, the defendant was found to be in possession of two unused methamphetamine pipes. *Id*. at 347. The officer "testified to his extensive training and experience, including his knowledge that the pipes were used for methamphetamine and that, when he had discovered methamphetamine pipes in the past, it was more likely than not that he would also find methamphetamine associated with those pipes." *Id*. The

officer therefore "believed that it was more likely than not that he would discover methamphetamine in defendant's car." *Id*. We concluded that the officer's testimony could establish that the pipes were methamphetamine pipes but was insufficient to create probable cause for possession. *Id*. at 347-48. The testimony was "not particularized to defendant or her car" and "did not provide enough facts about defendant or her car that, combined with [the officer's] training and experience, would lead a reasonable person to believe that evidence of current drug possession would probably be found in defendant's car." *Id*.[2]

Here, of course, we have already concluded that Humphrey's affidavit established probable cause to believe that defendant had committed invasion of personal privacy, and we are now focused on the more specific issue of whether evidence would more likely than not be found on defendant's cell phone. The standard is fundamentally the same, however, whether the issue is the sufficiency of the evidence to establish probable cause to believe that a person has committed a particular crime or the sufficiency of the evidence to establish probable cause to believe that evidence of that crime will be found in a particular place. Keeping that in mind, we next consider some cases specifically involving warrants.

In *Daniels*, 234 Or App at 543, we upheld the denial of a motion to suppress after concluding that a warrant to search the defendant's home for videotape evidence of child sexual abuse was valid. The objective facts in the officer's affidavit were sufficient on their own to establish probable cause to believe that some physical evidence would be found in the home. *Id*. at 539. As for *videotape* evidence specifically, however, the objective facts were sufficient only when coupled with the officer's training and experience. *Id*. The only objective fact related to videotapes was an allegation that the defendant had tried unsuccessfully to videotape an

---

[2] Even more recently, in *State v. Taylor*, 308 Or App 61, 73, 479 P3d 620 (2020)—which involved the lower standard of reasonable suspicion—we reiterated that an officer's training and experience "cannot take the place of articulable facts," and we concluded that an officer's training regarding drug crimes and experience regarding drug crimes in the particular area of a traffic stop were insufficient to establish reasonable suspicion as to defendant personally.

act of sexual abuse of his daughter at least 20 years earlier. *Id*. at 535. We described that dated evidence as "undeniably" insufficient on its own to obtain a warrant to search for videotapes, as it created "at most a tenuous suspicion that defendant might possess illegal videotapes." *Id*. at 539-40. It was sufficient, however, when coupled with the officer's knowledge from training and experience, including that pedophiles own and often retain "deviant" movies and rarely dispose of sexually explicit materials. *Id*. at 541. The inclusion of videotapes in the warrant as one of the items for which officers could search therefore was valid. *Id*. at 543.

More recently, in *State v. Friddle*, 281 Or App 130, 131-33, 381 P3d 979 (2016), a state trooper responded to a violent altercation between the defendant and his then-girlfriend, under circumstances that created probable cause to believe that evidence of the altercation would be found on the defendant's home security system and a specific cell phone that the defendant used to access that system. The trooper obtained a warrant to search *all* of the defendant's personal electronic devices, supported by an affidavit stating, among other things, that the trooper had learned from training and experience that "subjects involved in criminal activity regularly use cellular telephones and cellular telephone features * * * to record and store photos, audio recordings, and video recordings of their crimes." *Id*. at 133, 139. Upon execution of the warrant, illegal drugs were found in a gun safe, which the defendant later moved to suppress. *Id*. at 131. The trial court denied the motion, and we reversed. *Id*. Although probable cause existed to search the security system and the one cell phone, because there were objective facts to support a belief that evidence would more likely than not be found on those two devices, probable cause did not exist to search any other electronic devices, because there were no objective facts for any other devices. *Id*. at 139. The warrant was therefore invalid. *Id*. at 131.

Applying the foregoing principles, the facts in Humphrey's affidavit were insufficient to establish probable cause to search defendant's cell phone. Certainly, it was possible that evidence of invasion of personal privacy might exist on defendant's cell phone. It might even have been a "well-warranted suspicion," given Humphrey's training and

experience. But neither a possibility nor a well-warranted suspicion is probable cause. *Williams*, 270 Or App at 725. "Rather, the standard of probability requires the conclusion that it is *more likely than not* that the objects of the search will be found at the specified location." *Id*. (internal quotation marks omitted; emphasis added). To meet that standard, an officer must be able to articulate specific facts about the defendant, which must be "derived from other sources," and only then can be interpreted through the lens of training and experience. *Daniels*, 234 Or App at 540. "[A]n officer may consider the facts in light of the officer's training, knowledge, and experience, but that experience cannot itself supply the facts." *Aguilar*, 307 Or App at 469.

No one ever reported seeing the Surf Pines peeping tom using a cell phone or any type of electronic device. No one ever saw the peeping tom even holding a cell phone, let alone using one during his crimes. In that context, the unremarkable fact that defendant had a cell phone on him at the time of his arrest cannot supply the objective factual foundation necessary for probable cause. Cell phones are ubiquitous. Merely having a cell phone in his possession was too thin a reed to support probable cause, when virtually anyone on the street would have a cell phone. Relatedly, the state argues that the fact that defendant had binoculars, toilet paper, *and* a cell phone on his person allows an inference that he was using all three items in aid of peeping activities. But if everyone carries a cell phone, there is no logical reason to group defendant's cell phone with his binoculars and toilet paper, rather than grouping it with his clothing and house keys or the like. On this record, something more was required to connect *defendant's* cell phone with *defendant's* suspected criminal activity. Humphrey's training and experience that criminals in general often use cell phones to aid in the commission of their crimes and that voyeurs in particular often use cell phones to record their victims cannot itself give rise to probable cause. *Cf. State v. Miller*, 254 Or App 514, 528, 295 P3d 158 (2013) (holding that a warrant to search the defendant's home for evidence of drug dealing was not supported by probable cause, where the police witnessed him selling drugs on three occasions, but those sales occurred away from home and there were no

objective facts to connect defendant's criminal activity to his home; the officer's averments from training and experience about the habits of drug dealers were insufficient to establish probable cause where the "necessary factual nexus" was absent).

Analogizing to *Daniels*, even a single report of the Surf Pines peeping tom using a cell phone during his crimes might have been enough to establish probable cause to search defendant's cell phone. That additional objective fact could have potentially shifted the situation over the "more likely than not" line. That said, a videotape is different from a cell phone, which would have to be taken into account in the analysis. *See Mansor*, 363 Or at 209-10) (recognizing that a videotape is not analogous to a computer or a cell phone). In any event, we need not decide exactly how much more would have been necessary to establish probable cause, because, in this case, there were no objective facts to connect defendant's cell phone with his suspected criminal activity.

We therefore conclude that the trial court erred in denying defendant's motion to suppress the photographs and videos obtained from his cell phone.

## II.    MOTION TO SUPPRESS EVIDENCE FROM RESIDENCE AND CAMPER

Five weeks after obtaining the warrant to search defendant's cell phone, Humphrey applied for and obtained warrants to search defendant's Surf Pines residence, Portland residence, and various vehicles. The execution of those warrants led to the seizure of more incriminating evidence from a residence and from a camper.

Humphrey relied heavily on the evidence from defendant's cell phone to obtain the later warrants. Having held that the cell phone evidence should have been suppressed, it follows that the evidence from defendant's residence and camper also should have been suppressed. Without the cell phone evidence, the limited information in the affidavits was insufficient to establish probable cause to search defendant's residences and vehicles. The state implicitly concedes as much, making no argument that the later warrants were

valid even if the first warrant was invalid, except that it argues that we need not address the portion of the motion relating to the camper because the charges based on that evidence were dismissed. Under the circumstances, a more detailed discussion of the second assignment of error would be of little benefit. The trial court erred in denying defendant's motion to suppress the evidence from his residence.

### III.   MOTION FOR JUDGMENT OF ACQUITTAL (DISPLAY COUNTS)

In his third assignment of error, defendant argues that the trial court erred in denying his motion for judgment of acquittal on six counts of using a child in a display of sexually explicit conduct, ORS 163.670. In reviewing the denial of a motion for judgment of acquittal, we view the facts and reasonable inferences therefrom in the light most favorable to the state. *State v. Waterhouse*, 359 Or 351, 353, 373 P3d 131 (2016). Our task is to determine whether a rational factfinder could have found each element of the offense to have been proved beyond a reasonable doubt. *State v. Reed*, 339 Or 239, 243, 118 P3d 791 (2005).

A person commits the crime of using a child in a display of sexually explicit conduct "if the person employs, authorizes, permits, compels or induces a child to participate or engage in sexually explicit conduct for any person to observe or to record in a visual recording." ORS 163.670(1). A child is any person less than 18 years of age or, when a visual recording is at issue, less than 18 years of age at the time of the original recording. ORS 163.665(1).

Defendant was convicted of six counts of display, based on "permitting" a child to participate or engage in sexually explicit conduct for a person (defendant) to visually record. The counts involved multiple different victims, that is, different teenaged girls who defendant allegedly photographed or video recorded without their knowledge while they engaged in sexual activity in their bedrooms. The state argues that the evidence was sufficient to survive a motion for judgment of acquittal, because there was evidence that defendant, while engaged in peeping activities, had "permitted" himself to visually record girls less than

18 years of age engaging in sexually explicit conduct. As a matter of statutory construction, the state argues that ORS 163.670(1) encompasses a person's act of "permitting" the visual recording of sexually explicit conduct by a child, even if the person did not "permit" the sexually explicit conduct itself. The state concedes that, in this case, the evidence would not allow a finding that defendant "permitted" any of the sexually explicit conduct.

We reject the state's proposed construction of ORS 163.670(1), which is contrary to the statutory text. The text of a statute generally is the best evidence of the legislature's intent and must be given primary weight in the analysis. *Vasquez v. Double Press Mfg., Inc.*, 364 Or 609, 615-16, 437 P3d 1107 (2019). As relevant here, to commit the crime of display, a person must "permit[] *** a child to participate or engage in sexually explicit conduct for any person to observe or to record in a visual recording." ORS 163.670(1). The "any person" who observes or records the conduct may be the same "person" who "permits" the child to participate or engage in it. *State v. Clay*, 301 Or App 599, 608, 457 P3d 330 (2019). However, as a straightforward grammatical matter, what a person must "permit" under the statute is *a child's participation or engagement* in sexually explicit conduct for observation or recording. ORS 163.670(1); *see also State v. Porter*, 241 Or App 26, 35, 249 P3d 139 (2011) (construing "permit" to mean "allow" or "make possible," and holding that "there was sufficient evidence that defendant permitted his stepdaughter to be used in displays of sexually explicit conduct in his home"). ORS 163.670 addresses the "most serious kind of harm covered by this part of the criminal code" and is meant to prevent "the underlying harm caused by child sexual abuse" and "the subjection of children under 18 years of age to sexual exploitation for the purpose of visual recording." *State v. Stoneman*, 323 Or 536, 547-48, 920 P2d 535 (1996).

The state's proposed construction of ORS 163.670(1) is inconsistent with the statutory text and unsupported by any statutory context or identified legislative history. It is also irreconcilable with *Clay*, a decision published after oral argument in this case, in which we also construed ORS 163.670(1). As explained in *Clay*, the behavior proscribed by

ORS 163.670(1) is employing, authorizing, permitting, compelling, or inducing a child to participate or engage in sexually explicit conduct *for the purpose of* a person observing or recording it. 301 Or App at 606 (discussing the "functional relationship" between the defendant's behavior and the purpose of the defendant's behavior, as created by the word "for"). The state's proposed construction would make it the crime of display to *either* permit a child to engage in sexually explicit conduct for observation or recording *or* observe or record a child engaged in sexually explicit conduct. That construction is inconsistent with the statutory text and our prior construction of the statute.

The trial court therefore erred in denying defendant's motion for judgment of acquittal on the display counts. The state concedes that there was no evidence that defendant "permitted" sexually explicit conduct by any child. It argues only that there was evidence that defendant "permitted" himself to make visual recordings of sexually explicit conduct by children that he witnessed while engaged in peeping activities. Given the statutory elements, such evidence was insufficient to prove the crime of display. Accordingly, defendant was entitled to judgments of acquittal on the six counts of using a child in a display of sexually explicit conduct, ORS 163.670.

Convictions for using a child in a display of sexually explicit conduct, ORS 163.670, reversed; remaining convictions reversed and remanded; otherwise affirmed.