376 September 10, 2025 No. 808

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVEN JAMES SCHULT,
*Defendant-Appellant.*

Multnomah County Circuit Court
19CR70795; A179078

Jerry B. Hodson, Judge.

Argued and submitted August 28, 2024.

Stacy M. Du Clos, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Pagán, Judge, and O'Connor, Judge.*

PAGÁN, J.

Reversed and remanded.

_____

* O'Connor, Judge *vice* Mooney, Senior Judge.

**PAGÁN, J.**

Defendant appeals from a judgment of conviction, following a bench trial, for one count of first-degree sodomy, ORS 163.405 (Count 1), and eight counts of first-degree sexual abuse, ORS 163.427 (Counts 2, 4, and 6-11).[1] The convictions stemmed from allegations made against defendant by his partner's niece. On appeal, defendant raises five assignments of error, challenging the denial of his motion to suppress evidence obtained through a warranted search, the exclusion of a portion of his expert's testimony, and the admission of evidence showing his sexual interest in children. We reverse and remand based on defendant's first assignment of error regarding the warrant to search his electronic devices, and therefore do not reach the remaining arguments.

## MOTION TO SUPPRESS

Defendant asserts that the trial court erred in denying his motion to suppress evidence obtained from the warranted search of his home and electronic devices. Specifically, he challenges the admission of evidence obtained from his phone and his computer, and from a sketchbook containing drawings that he created. The state concedes that the court erred in not suppressing the sketchbook and the evidence obtained from defendant's computer; however, the state maintains that any error in that regard was harmless. We accept the state's concession, but disagree regarding harm and conclude that the admission of the sketchbook and computer evidence was not harmless. With respect to the search of defendant's phone, we conclude that the warrant was a "mixed warrant," containing both valid and invalid search commands. *State v. Turay*, 371 Or 128, 157, 532 P3d 57 (2023). We therefore reverse and remand for further proceedings to determine what evidence must be suppressed, and to create a record as to whether any evidence was untainted by the constitutional violation.

A.  *Factual Background*

"In reviewing whether a search warrant was supported by probable cause, we consider only those facts put

---

[1] The trial court acquitted defendant of two counts of first-degree sexual penetration, ORS 163.411 (Counts 3 and 5), and one count of using a child in a display of sexually explicit conduct, ORS 163.670 (Count 12).

before the magistrate in the supporting affidavit, along with reasonable inferences that can be drawn from them." *State v. Cannon*, 299 Or App 616, 618, 450 P3d 567 (2019). We recite the facts accordingly.

Detective Dressler, the detective assigned to this matter, submitted the search warrant for defendant's residence in June 2018. In the affidavit, Dressler discussed his training and experience and described the specific investigation into defendant as follows.

The alleged victims in this case are two children, T and R. T's mother, Trelstad, caught T, who was five years old at the time, and another similar-aged child taking videos of their private parts using a tablet. When asked where she had learned that behavior, T told her mother that she learned it from Uncle Steven, defendant.[2] On May 20, 2018, T was interviewed at CARES NW by a physician and a forensic interviewer, during which she reported that defendant "did inappropriate stuff." Dressler recounted the report of another police officer who had viewed the video of the interview, in which T disclosed that the inappropriate behavior happened while she was at her aunt and uncle's house, in the playroom or living room, when her aunt, Morgan, would leave the house. She disclosed that defendant had touched multiple intimate parts of her body with his hands and tongue and had exposed his genitals to her more than once and had her touch his penis. T further reported that defendant had attempted to take pictures of T's private parts with his phone, which she believed to be black with a gray cover. She additionally reported having witnessed defendant inappropriately touching her younger brother, R, and seeing R touch defendant's penis at least once.

Dressler interviewed Trelstad on June 6, 2018, at which point Trelstad reported that she and the children had previously lived with defendant and Morgan, and that defendant and Morgan had been caring for R for the previous year and a half. Upon T's disclosure of the abuse, Trelstad removed R from the home. Trelstad reported that she had had concerns about defendant over the years that he had

---

[2] Defendant had been in a relationship with T's paternal aunt for over ten years, but they were not married. He is not related to T by blood.

been a part of the family, including because he was a nudist and would often walk around without clothes on. She also shared that the children's father, who was deceased, had located photographs of naked children in defendant's belongings, approximately 7-10 years earlier. Trelstad had heard that the family confronted defendant about the photographs and that he had responded that the images were artwork.

The remainder of the affidavit consisted of Dressler's general knowledge, and that of a fellow detective, Tobey, concerning digital devices and their use and operation, as well as common behaviors and actions of people who have a sexual interest in children.

Based on that information, Dressler stated that it appeared that defendant has a sexual interest in children predating the birth of T, and that he had acted on that interest in molesting both T and R. He further stated that it appeared that defendant had photographed and attempted to photograph T's genitals for sexual purposes. He concluded that there was probable cause to believe that defendant committed the crimes of sexual abuse in the first degree, sodomy in the first degree, using a child in a display of sexually explicit conduct, and encouraging child sexual abuse in the first and second degree; and that evidence of those crimes would be present in any electronic devices on defendant's person or located in his residence. A magistrate issued a warrant to seize and search any mobile device, computer, laptop, and accessory to find the following evidence:

"1.   Videos, photographs, or images of children who are naked or engaged in sexually explicit conduct;

"2.   Videos, photographs, or images of [T]; and

"3.   Communications related to child molestation or the creation, distribution, or sharing of child pornography."[3]

Upon executing the warrant, the police seized defendant's phone and computer and conducted a forensic search

---

[3] Those search categories were listed in the warrant affidavit. Although the warrant did not identify those specific categories of evidence, the parties agree that the warrant should be read in light of the specific search commands identified in the affidavit, and we agree. *State v. Mansor*, 363 Or 185, 204-05, 421 P3d 323 (2018) ("[T]he contents of the affidavit assist us in determining the scope of the search that the warrant permitted.").

of both devices. Evidence from the phone included photographs and videos of T and R playing at defendant's home;[4] evidence of Google and YouTube searches for naked children and children in the bathroom; and a search query conducted on March 19, 2018, for "is the child victim of sexual abuse telling the truth?" The search of the computer resulted in the discovery of a number of recordings entitled "this bullshit," documenting Morgan questioning T about her disclosure. The police also seized a sketchbook containing cartoon drawings of naked figures that defendant drew, which defendant admitted during an interrogation made him appear guilty in light of the allegations against him. The photos and videos of T and R, the internet history, the recordings, and the sketches were all admitted as exhibits at trial.

B.  *General Legal Framework*

Challenges to search warrant particularity implicate Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United States Constitution.[5] When a search is conducted pursuant to a warrant, "a presumption of regularity arises, based on the fact that an independent magistrate has already determined that probable cause exists; therefore, the defendant bears the burden of proving the unlawfulness of a warranted search." *State v. Hargrove*, 327 Or App 437, 443, 536 P3d 612 (2023). When a search warrant includes a duly incorporated affidavit, then "the contents of the affidavit assist us in determining the scope of the search that the warrant permitted." *State v. Mansor*, 363 Or 185, 204-05, 421 P3d 323 (2018).

The particularity analysis of a warrant is informed by "two related, but distinct, concepts," specificity and overbreadth. *Id.* at 212. Specificity requires that "the search be as precise as the circumstances allow and that undue rummaging be avoided." *State v. Rose*, 264 Or App 95, 107, 330 P3d 680, *rev den*, 356 Or 400 (2014) (internal quotation marks omitted). A search warrant "must be sufficiently

---

[4] The children were fully clothed in the photos and videos. Defendant is in the videos, wearing only boxer-briefs, playing with R.

[5] Defendant raises arguments under both the federal and state constitutions. Because we are remanding this matter under state law, we do not separately analyze the federal issues.

specific in describing the items to be seized and examined [so] that the officers can, with reasonable effort ascertain those items to a reasonable degree of certainty." *Mansor*, 363 Or at 212 (internal quotation marks omitted). In addition, a search warrant must not be overbroad, that is, it "must not authorize a search that is broader than the supporting affidavit supplies probable cause to justify." *Id.* (internal quotation marks omitted). "[T]he gravamen of an overbreadth challenge is an asserted lack of probable cause for the invasion of interests in privacy in premises or items." *Cannon*, 299 Or App at 626 (internal quotation marks omitted). "Evidence is the proper object of a search warrant as long as there is a nexus between the item to be seized and criminal behavior. Probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." *State v. Goode*, 335 Or App 108, 120, 557 P3d 1132 (2024), *rev den*, 373 Or 280 (2025) (internal quotation marks and alterations omitted).

C.   *Analysis*

Defendant raises four distinct challenges to the trial court's denial of his motion to suppress evidence discovered pursuant to the warrant. He asserts that the warrant was overbroad in allowing a search for evidence of crimes other than those alleged against T and R; that the warrant was insufficiently specific with respect to the date range of the search; that the warrant was overbroad in authorizing the seizure and search of all electronic devices when there was only probable cause for a single specific device; and that the officers exceeded the scope of the warrant by seizing the sketchbook, which was not a digital device. The state concedes that the court erred in not suppressing evidence from the computer and sketchbook, and we agree; nevertheless, the state maintains that any error was harmless. We conclude that the error was not harmless with respect to the evidence discovered on the computer, and reverse and remand. Furthermore, we conclude that the warrant was overbroad in ways that impacted the search of the phone, and we remand for further proceedings to determine what, if any, evidence was discovered as a result of the overbroad warrant.

1.   *The admission of the evidence obtained from the computer was not harmless error.*

The warrant authorized the police to seize, test, review, and analyze "mobile devices, computers, or laptop computers, and accessories associated with any seized device," and to present any such devices to a computer forensic examiner for a search of its contents. Defendant argues that the affidavit did not provide any case-specific reasons to believe that devices other than defendant's cell phone would include objects of the search. He maintains that the affidavit's general assertions based on the detective's training and experience did not demonstrate that it was more likely than not that *each* of defendant's electronic devices would contain evidence of sexual abuse, an attempt to photograph T, or child pornography. The state acknowledges that, without additional information concerning defendant's use of his computer or how it interacted with other devices, the affidavit did not provide probable cause to search defendant's computer.

We agree. The warrant did not establish probable cause to search defendant's computer, and the trial court erred in denying defendant's motion to suppress the evidence that was discovered on the computer. *See State v. Cantrell*, 327 Or App 548, 556, 536 P3d 606 (2023) (holding that a warrant affidavit establishing probable cause to search a single device did not establish probable cause for each device authorized to be searched in the warrant); *Cannon*, 299 Or App at 631-32 (noting that general statements based on the officer's training and experience with technology and sex crime investigations did not provide probable cause to search a broad array of the defendant's electronic devices).

We therefore turn to the state's argument that any error was harmless. In assessing whether a conviction should be affirmed notwithstanding the improper admission of evidence, we consider the following question:

"Is there little likelihood that the particular error affected the verdict? The correct focus of the inquiry regarding affirmance despite error is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a fact-finder, would regard the evidence of guilt as substantial and compelling."

*State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). "A criminal defendant who assigns error to the exclusion or admission of evidence 'must establish that the error was not harmless.'" *State v. Gibson*, 338 Or 560, 575-76, 113 P3d 423, *cert den*, 546 US 1044 (2005) (quoting *State v. Lotches*, 331 Or 455, 487, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001)). In making the determination of whether there is little likelihood that a particular error affected the verdict, "we examine the record as a whole and consider the error and the context in which it occurred." *State v. Durando*, 262 Or App 299, 305, 323 P3d 985, *adh'd to as modified on recons*, 264 Or App 289, 331 P3d 1095, *rev den*, 356 Or 400 (2014).

We conclude that the denial of defendant's motion to suppress with respect to the evidence located on his computer was not harmless error. At trial, the court admitted into evidence multiple audio recordings that were found on defendant's computer, documenting conversations that defendant's partner, Morgan, engaged in with T. In the recordings, Morgan and other family members question T regarding the disclosures she made to her mother and grandmother, asking her who hurt her and what happened, in an attempt to get a recording of her allegations. T is mostly unresponsive to the questions, saying that she feels shy, does not want to talk, or does not remember what she told her mother and grandmother. However, she does say that Uncle Steven "did it" and mentions him putting his hands in her pants and rubbing "his thing" on her.

The admission of those recordings had more than a little likelihood of affecting the verdict. The state and defense both emphasized the importance of the recordings throughout the trial. In closing, the state repeatedly pointed to the interviews as evidence of T withstanding immense pressure and not caving to her aunt's "horrible, inappropriate, and manipulative" efforts to get her to recant her allegations. The state also used the recordings to help explain variations in T's testimony between trial, the grand jury, and the CARES interview, noting that she had withstood an hour-long "enhanced interrogation technique interview" by someone she loves and cares about, which could have impacted her willingness to be open about the details of

what happened to her. Defendant, on the other hand, used the recordings as a basis for arguing that T was an unreliable reporter, and perhaps would not even know what the truth was after all of the badgering that she was subjected to. The state ultimately characterized the case as turning on whether the court believed the child, and whether the court believed her enough. The recordings were a pivotal part of both parties' arguments regarding T's credibility. Therefore, they had more than a little likelihood of affecting the verdict and their improper admission was not a harmless error.[6]

### 2.  *Overbreadth of search commands*

Because it will arise on remand, we turn now to defendant's arguments regarding the validity of the search commands, as it relates to the search of his phone. As noted above, defendant argues that the search warrant was overbroad in that it allowed a search for evidence of crimes other than those for which there was probable cause, and that the warrant was insufficiently specific with respect to the date range of the search. We conclude that the warrant was a "mixed warrant," because it "combined some search categories that satisfied the constitution's particularity requirement with others that did not." *Turay*, 371 Or at 157. The warrant is therefore presumptively invalid; however, as discussed in further detail below, we remand for the development of a factual record as to whether any of the individual pieces of evidence were untainted by the constitutional violation. *Id.* at 167-69.

We review whether the search categories challenged on specificity grounds sufficiently describe, with particularity, the place to be searched and the persons or things to be seized. *State v. Curry*, 336 Or App 72, 83, 560 P3d 694 (2024). We review whether the search categories "authorize a search that is broader than the supporting affidavit supplies probable cause to justify." *Mansor*, 363 Or at 212 (quotation marks omitted).

---

[6] The state concedes that the sketchbook was also improperly admitted, as it was beyond the scope of the warrant for electronic devices. We accept the state's concession and agree that the sketchbook should have been suppressed. Because defendant is entitled to a new trial based on the erroneous admission of the evidence discovered on his computer, we need not engage in a discussion of the harmfulness of the admission of the sketches.

Defendant argues that the search commands authorizing the police to search for "videos, photographs, or images of children who are naked or engaged in sexually explicit conduct" and for "communications related to child molestation or the creation, distribution, or sharing of child pornography" are unsupported by probable cause. Defendant asserts that the affidavit did not establish probable cause to search for crimes involving *other* children beyond T and R, or that defendant was a collector or distributor of child pornography. We agree.

The warrant affidavit documented T's reports to her mother that she had learned about taking pictures of her private parts from defendant and her report to CARES that defendant had attempted to take pictures of her private parts with his phone. Those allegations established probable cause to search defendant's phone for images of T.[7] The affidavit also documented T's reports of sexual touching by defendant, including of T and of R. Apart from those allegations, the only other facts particularized to defendant were Trelstad's reports that defendant was a nudist who would often be unclothed at home, and the report that seven to ten years earlier family members had confronted defendant about photographs he had of naked children that defendant characterized as artwork. None of those facts establish probable cause to search defendant's phone for images of children in general, and nothing specific to defendant makes it more probable than not that defendant's phone would contain any communications relating to molestation or the creation and sharing of child pornography. Although the affidavit contains extensive information from Dressler regarding his and a fellow detective's training and experience related to the investigation of individuals with a sexual attraction to children, none of that information is particularized to defendant or the investigation into T's allegations. "To establish probable cause, an affidavit must do more than allege facts that support a mere suspicion that evidence will be found; even a well-warranted suspicion does not suffice." *State v.*

---

[7] Defendant does not challenge the search command allowing a search for "videos, photographs, or images of [T]." Defendant concedes that the warrant affidavit established probable cause that his cell phone could contain evidence of defendant creating or attempting to create images or videos of T.

*Cazee*, 308 Or App 748, 755, 482 P3d 140 (2021) (internal quotation marks omitted). "[P]robable cause must be based on specific and articulable facts *about the defendant*, interpreted in light of the existing circumstances and the officer's training and experience." *Id.* at 756 (emphasis in original). Dressler's statements about what people who have a sexual interest in children "frequently" or "often" do are not specific to defendant.

The state maintains that defendant is mistaken in his interpretation of the warrant as authorizing a search for crimes other than those committed against T and R. The state argues that defendant's possession of images of naked children or children engaged in sexually explicit conduct, or communications about molestation or child pornography, would have been evidence of defendant's crimes against T and R, as it would help establish defendant's sexual interest in children. However, in reading the affidavit as a whole in a common-sense and realistic fashion, taking into account both facts and inferences, *Curry*, 336 Or App at 81, we conclude that the search commands were intended to discover evidence of other crimes, in addition to those alleged against T and R. The affidavit goes into extensive detail about the common actions of child sex abusers, including the frequency with which they share images and content via digital media, methods used for gaining access to and grooming children, and pornography viewing habits. However, none of that general knowledge related to the allegations against defendant. There were no facts relating to defendant's internet usage, pornography habits, or communications with other individuals. Defendant was accused of abusing the very young children who were already in his household; there were no allegations of him communicating with minors via the internet, social media, or any other digital means. Yet the affidavit explicitly referred to investigating possible other crimes and victims. For example, in a discussion about examining pictures, video, and other media on a suspect's digital devices, including location and other metadata imbedded within, the warrant stated: "This information could be helpful in identifying unknown child victims whom the suspect encourage[d] or induced to create and transmit sexually explicit images of themselves to the suspect."

We therefore conclude that the search categories authorizing police to search for "videos, photographs, or images of children who are naked or engaged in sexually explicit conduct" and for "communications related to child molestation or the creation, distribution, or sharing of child pornography" were not sufficiently particular.[8]

D.  *Remedy*

We thus turn to the proper remedy. The improperly seized evidence from defendant's computer and sketchbook must be suppressed. On remand, defendant may also raise any arguments regarding suppression of any evidence that derived from those unlawful seizures. *See generally State v. DeJong*, 368 Or 640, 497 P3d 710 (2021) (explaining the process and burdens for challenging the admissibility of evidence deriving from a prior unlawful seizure).

With respect to the search of defendant's phone, the unconstitutionally overbroad nature of some of the search commands renders all evidence obtained pursuant to the warrant presumptively subject to suppression. *Turay*, 371 Or at 164-68 (concluding that a mixed warrant to search a digital device, consisting of both valid and invalid search commands, created a presumption that the evidence discovered pursuant to the search of the device must be suppressed). As was the case in *Turay*, there is a minimal factual nexus between the constitutional violation and the challenged evidence, because the state discovered the evidence during the execution of the warrant authorizing the search of defendant's digital devices; that nexus establishes the presumption in favor of suppression. *Id.* at 166. However, the state has the opportunity to rebut the presumption by establishing what, if any, of the challenged evidence was untainted by the violation. *Id.* at 168. The record is undeveloped as to how the unlawful search categories in the warrant affected the data that the state extracted from defendant's cell phone. Therefore, remand for further proceedings and factfinding on that point is warranted, consistent with *Turay*.

---

[8] Because further proceedings are necessary to determine what, if any, evidence is untainted by the improper search commands, we do not reach defendant's arguments regarding the specificity of the date ranges of the search commands.

CONCLUSION

For the reasons discussed above, the trial court erred in not granting defendant's motion to suppress, and defendant is entitled to a new trial and additional proceedings to determine the extent of the evidence that must be suppressed. That decision obviates the need to reach defendant's remaining assignments of error, as the evidentiary issues involved may arise in a different posture on retrial, or not at all.[9]

Reversed and remanded.

---

[9] Any argument on remand regarding the admissibility of evidence under OEC 404(4) should be reexamined in light of the updated jurisprudence on that issue. *See State v. Davis*, 372 Or 618, 553 P3d 1017 (2024); *State v. Martinez*, 335 Or App 643, 559 P3d 907 (2024), *rev den*, 373 Or 713 (2025).